[Civ. No. 53301. Second Dist., Div. Five. Oct. 10, 1979.]

In re the Marriage of SHIRLEY JOYCE and FREDRICK MARX, JR.
SHIRLEY JOYCE MARX, Respondent, v.
FREDRICK W. MARX, JR., Appellant.

554

**COUNSEL**

Newell & Chester and Robert M. Newell for Appellant.

Trope & Trope, Sorrell Trope and William B. Anderson for Respondent.

## OPINION

**HASTINGS, J.**—This is an appeal by Fredrick W. Marx, Jr. (husband) from a judgment in a dissolution of marriage action whereby he contends that the trial court awarded Shirley Joyce Marx (wife) more than one-half of the community estate, and abused its discretion in the award for spousal and child support.

There is no serious dispute concerning the basic underlying facts of the case; therefore, we set them forth substantially as stated by husband in his opening brief.

The parties were married on January 27, 1959, and separated on July 5, 1976. There are three minor children of the marriage, Caroline, Fredrick, and Susan. Custody was awarded to wife by stipulation subject to husband's right of reasonable visitation.

Husband is a general surgeon practicing alone; however, his practice is incorporated. The trial court found that the community property of the parties consisted of the following assets and their values:

| ASSET | VALUE |
|---|---|
| A. Improved real property at 219 Tilden Street, Los Angeles, California | $260,000.00 |
| less 1st Trust Deed with Home Savings & Loan Association (as of 2/10/77) | $ 95,237.00 |
| Equity | $164,763.00 |
| B. 1973 Ford station wagon automobile | $ 2,700.00 |
| C. Interest in medical practice corporation, including, but not limited to, equipment, furniture and fixtures, accounts receivable, 1971 Ford LTD automobile, other tangible and intangible assets and goodwill | $ 85,990.00 |
| D. Pension fund | $ 74,158.00 |
| E. Keogh Plan | $ 6,618.00 |

F.  One-half value of National
    Service policy ................................................................. $     340.00

G.  Security Pacific National Bank,
    Acct. No. 062 398 ......................................................... $     706.23

H.  Lloyds Bank account ...................................................... $   2,340.00

I.  Proceeds from sale of three etchings—
    gross receipts received by Petitioner
    of $7,500.00 less payment of community
    obligations of $500.00 to daughter,
    Caroline, and $500.00 loan to
    family housekeeper, for net value .................................. $   6,500.00

J.  Household furniture, furnishings,
    appliances, paintings and objects of art
    (stipulated to be divided in kind) ................................... not valued

Total Value of Community Property                          $344,115.23

Wife received the residence, Ford station wagon and proceeds from the sale of the three etchings. These assets totaled $173,963.00. Husband received the balance of the assets which totaled $172,057.61. To equalize division of the community property, wife was ordered to pay husband $1,905.39.

The court also found there was a community obligation of $22,000 to California Federal Savings and Loan Association. The court ordered husband to pay this obligation as additional spousal support. The principal spousal support order was that husband should pay wife $2,500 a month for two years, $2,000 a month for seven years, and $1,000 thereafter until the death or remarriage of wife or further order of court, whichever event occurs first.

Child support was ordered in the sum of $450 a month per child, for a total of $1,350 a month.

Husband was ordered to pay wife's counsel $7,000 on account of attorney's fees in addition to the $5,000 which he had previously paid, and wife was ordered to pay the balance of her attorneys' fees in the amount of $3,919.25.

Additional facts will be added as required.

## I

■ Husband's first issue on appeal is that the trial court's order requiring him to discharge the community debt of $22,000 to California Federal Savings and Loan Association as "additional spousal support" was not a true support order but was an unlawful charge to him of a community obligation that resulted in an unequal division of the property. Husband's argument is based on recent California cases that have established that community property assets and community property debts must be divided equally when the community assets exceed the community obligations. (*In re Marriage of Fonstein*, 17 Cal.3d 738, 748 [131 Cal.Rptr. 873, 552 P.2d 1169]; *In re Marriage of Barnert*, 85 Cal.App.3d 413, 420-421 [149 Cal.Rptr. 616]; *In re Marriage of Smith*, 79 Cal.App.3d 725, 746, fn. 9 [145 Cal.Rptr. 205]; and *In re Marriage of Eastis*, 47 Cal.App.3d 459, 463 [120 Cal.Rptr. 863].)

In the case of *In re Marriage of Chala*, 92 Cal.App.3d 996 [155 Cal.Rptr. 605], a similar argument was made, and we considered the propriety of an order that required the husband to pay past due community debts as spousal support. The opinion notes that such an award is proper when the payments are necessary to protect the future support payments to the wife by ensuring that they will be used for her living expenses, and not depleted by payments to the creditors or are in reality a discharge of the paying spouse's duty to support. But we also noted the growing trend on the part of trial courts to circumvent the mandate of the Family Law Act to divide the community property equally by ordering a spouse to pay certain debts under the label of spousal support. We held that the spousal support award in *Chala* was improper.

Here the facts are somewhat different, but we also conclude the order under attack by husband is improper.

Civil Code section 4801, subdivision (a)[1] sets forth the standards that the trial court must consider in awarding spousal support. It appears the

---

[1]The pertinent provisions of section 4801, subdivision (a) are: "(a) In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable. In making the award, the court shall consider the following circumstances of the respective parties:
"(1) The earning capacity and needs of each spouse.
"(2) The obligations and assets, including the separate property, of each.
"(3) The duration of the marriage.
"(4) The ability of the supported spouse to engage in gainful employment without

court properly followed these standards and made a reasonable monthly support award to wife. Accordingly, there was no need to increase this award by ordering husband to pay the $22,000 debt. A somewhat analogous situation was considered by our Supreme Court in *In re Marriage of Epstein*, 24 Cal.3d 76 [154 Cal.Rptr. 413, 592 P.2d 1165], where the trial court allowed husband reimbursement from the community for postseparation house payments he had made. The Supreme Court said the payments were not reimburseable if they were in fact justified as spousal support; if not, the reimbursement was proper. (*Id.*, at p. 80.) The case was returned to the trial court for determination of this issue. To help guide the trial court, the opinion adopted a portion of *In re Marriage of Smith, supra,* 79 Cal.App.3d 725, 748, that said: "However, two prime considerations will obviously be whether or not there was a need for spousal or child support at the time the payment was made and *whether or not the payment made was in addition to reasonable support already being provided by the paying spouse either pursuant to or in the absence of a court order.*" (Italics ours.) In other words, it would probably not qualify as additional spousal support if *other* reasonable support was provided for.

The order requiring husband to pay the debt was suspect for another reason: Civil Code section 4801, subdivision (b) provides: "Except as otherwise agreed by the parties in writing, the obligation of any party under any order or judgment for the support and maintenance of the other party shall terminate upon the death of either party or the remarriage of the other party." The order here undoubtedly expected husband to pay this debt, regardless of wife's marriage or death before full payment. Wife if she remarried, or her heirs, would certainly so contend if California Federal Savings and Loan tried to collect one-half of the balance from her or from her estate. Wife agrees it would have been "theoretically cleaner" to have ordered her to pay one-half of this debt, but this would have required husband to pay her more spousal support in return. There is nothing in the record to support this argument. It may or may not be true. Wife received a substantial equity in the home and her half of the debt could possibly have been paid through refinancing; or husband could have been required to pay wife's share of the debt but have received an offsetting community property asset. In any event, if the court had found wife was entitled to more spousal support because the

---

interfering with the interests of dependent children in the custody of the spouse.

"(5) The time required for the supported spouse to acquire appropriate education, training, and employment.

"(6) The age and health of the parties.

"(7) The standard of living of the parties.

"(8) Any other factors which it deems just and equitable."

payments were related to her future living expenses, they would have stopped in the event of her death or remarriage and husband would not be saddled with her debt, as he could be under the present order.

We conclude that the court erred in not dividing this debt equally between the parties.

## II

Husband next claims it was error to value the pension fund at $74,158, which was the face value of the contributions deposited in the fund.[2] This was unfair, he argues, because the valuation did not make allowance for any income tax that he would be required to pay on the receipt of the pension benefits. There was testimony that if the pension fund was immediately liquidated, the sums received would bear an income tax of 60 percent, thus producing approximately $30,000 to the recipient. The plan matures in 1990. If it continues to that time an unknown, but substantial, income tax would be owed on payments made to the beneficiary.[3] Husband further contends that $1.00 in 1990 will be less than $1.00 today (citing *In re Marriage of Tammen,* 63 Cal.App.3d 927, 931 [134 Cal.Rptr. 161]) making it even more inequitable to him if he must take the entire pension plan. For these reasons, he states, the court was required to divide the pension fund in kind, either by assigning one-half of the proceeds to the wife when they are due (she would then pay her share of the tax), or by immediately liquidating the pension fund and distributing the proceeds equally after payment of taxes.

We granted a rehearing in this case because we held in our first opinion (now superseded by this opinion) that husband was not required to take the pension fund in toto in the absence of economic circumstances justifying such a distribution. We held that the rule in *Brigden* (*In re Marriage of Brigden,* 80 Cal.App.3d 380 [145 Cal.Rptr. 716]) should have been followed and the fund divided in kind. This solved the valuation problem because the parties were equally sharing the tax and inflation burdens.[4] The petition for rehearing pointed out, for the first time, that

[2]Monies deposited from husband's corporation into the pension plan are deductible to the corporation. The income tax is deferred until actual payments to the beneficiaries of the plan.

[3]The amount cannot be ascertained now because the recipient's tax will probably change. Normally, the tax bracket will be lower if the recipient has retired, because of less income, which is the principal reason for a deferred income pension plan.

[4]We are not now, by dictum, holding that pension funds must be distributed between the parties absent economic circumstances. Further law on this issue must be spelled out

there was a strong economic situation involved in that the trial court obviously decided that it was in the best interests of the wife and children that they retain the family home because a move to a new home was economically unfeasable. (See *In re Marriage of Herrmann,* 84 Cal.App.3d 361, 366-367 [148 Cal.Rptr. 550].) There was no finding of fact in this regard and it was not argued in the original briefs. A review of the record indicates, however, that this was indeed the main thrust of wife's case. She testified that she looked for different housing, but it was more expensive. The financing for such a move was difficult and the children, well oriented in school, and happy with the neighborhood, would benefit substantially by remaining in the same home. After reading her testimony in this regard and her counsel's final argument emphasizing the reasons for awarding her the home, we are surprised by the statement of husband's counsel that he was caught by surprise when the court distributed it to her.

■ There is no doubt in our mind that the court awarded the family home to wife because economically and environmentally it was best for her and the children. To offset her equity in the home the court thus had the right to assign other assets to husband and not divide them in kind. Expert testimony by wife's witness valued the pension fund at $74,158. Husband's argument that this is unfair because of the future taxes that he must pay when he receives the fund must fail. The taxes are not "immediate and specific." (*In re Marriage of Clark,* 80 Cal.App.3d 417, 422 [145 Cal.Rptr. 602]) but instead are payable in the future and the exact amount is speculation.[5] *In re Marriage of Fonstein, supra,* 17 Cal.3d 738, permits the court to ignore the tax consequences on valuation in such circumstances. The same reasoning should apply to the speculative effect of inflation on the valuation. There was no error in the valuation and assignment to husband of the pension fund.

### III

■ Husband's third issue on appeal is that it was error to value the medical corporation at $85,990. This figure was submitted by wife's

when the problem is squarely before the court. *In re Marriage of Connolly,* 23 Cal.3d 590 [153 Cal.Rptr. 423, 591 P.2d 911], has vested the trial judge with greater discretion than spelled out in *In re Marriage of Brigden, supra,* 80 Cal.App.3d 380. See also *In re Marriage of Kasper,* 83 Cal.App.3d 388 [147 Cal.Rptr. 821].

[5]It is true that the tax consequences can be important in this type of a situation. Some plans require distribution on maturity and it is conceivable that the future maturity date could be so close to the date of trial that the tax consequences could be determined and could qualify as "immediate and specific." Here, however, the plan does not mature until 1990.

expert witness, who reached his conclusion by preparing a balance sheet and adding a goodwill factor to the reconstructed book value. One of the principal assets of the corporation as of December 31, 1976, the date of the expert's valuation were accounts receivable which were discounted to $36,719. Husband states that including the accounts receivable in the valuation of his business is error because it in effect gives the wife half of the accounts receivable in the distribution of the community property, and then gives her the other half or a substantial portion thereof via spousal and child support. We disagree. Evidence showed that the value of the accounts receivable existing on the date of separation (July 5, 1976) were of essentially the same value as on the accounting date nearest the date of trial (Dec. 31, 1976). Wife had a community interest in the accounts receivable existing on the date of separation, and by including them in the valuation of the business, her interest is protected. Child and spousal support must be based upon the supporting spouse's future earnings or income. "Following separation, the preferred source for payment of support is the separate property of the supporting spouse that would have been community property if the spouses were not separated." (*In re Marriage of Epstein, supra,* 24 Cal.3d 76, 85.) Husband's argument would require child and spousal support to be paid from community cash on hand before his responsibility for the support commences. This is not the law, and there was no error.

## IV

Husband also challenges the valuation of $260,000 placed on the family home. The property in question is located in a fashionable neighborhood in Los Angeles, California. It was purchased in 1973 at a cost of $124,000, and an additional $129,000 was spent in improvements shortly thereafter. Wife's expert witness valued the family home at $260,000. Husband's expert testified that the family home would command a sale price of between $325,000 and $330,000. It is husband's position that it is a matter of common knowledge that desirable residential property in West Los Angeles, which cost $259,000 in 1973 would have increased substantially in value by 1977. This argument, however, has its exceptions. Property values in general could increase but a single parcel, for various reasons, could be uninfluenced by the trend. The testimony and cross-examination of both experts was quite extensive and merely created a conflict in the evidence. This being the case, the presumption is in favor of the judgment and we are required to affirm. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183].)

V

■ Husband's final argument in connection with the dissolution proceedings is that the awards of spousal support and child support were excessive.

He concedes that the trial court has wide discretion to fix spousal support and child support. (*In re Marriage of Morrison,* 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41].) Husband cites various arguments, including figures, to support his allegation that he cannot afford to pay the combined spousal and child support ordered by the court. In sum, he states that the trial court had before it uncontradicted evidence that his salary is $7,000 a month for an annual gross income of $84,000, and that it was an abuse of discretion to award the wife and three children $3,850 a month combined support when his take-home pay from the $7,000 was only $4,100. These figures, at least as to his net income, are inconsistent with the trial court's findings. There was considerable expert testimony as to the tax consequences of the different amounts of spousal support. The trial court found that husband will have a net spendable income of $6,637 per month after taxes. Wife's analysis of the combined awards seems to be supported by substantial evidence; that is, that the monthly income after tax for the wife and three children is $3,550 vs. after-tax income of roughly $2,787 for the husband living alone. After the first two years these figures decline as wife's monthly income is reduced by $500 a month. For the first two years, wife and the three children will receive 53.49 percent of husband's after-tax income. The trial court found that husband's monthly living expenses are $1,440. Based upon these figures, which are supported by the evidence, we cannot say that the court abused its discretion in spousal and child support awards, and they are affirmed.

VI

■ Husband concludes his appeal by claiming the court abused its discretion in refusing to reopen the case to permit additional evidence after handing down its memorandum of intended decision. He begins this argument by stating that it was assumed that the trial court would divide the pension benefit in kind and would order the family home sold. The implication is that because this was not done he should have another chance to introduce evidence that would change the court's mind on the valuation of the home and the distribution of the pension fund.

The new evidence was an offer by husband to purchase the family home from the community property for $290,000 and to then place the property on the open market for sale. He would then divide any additional proceeds over $290,000 equally with wife. As to the pension fund he proposed to introduce evidence that economically his corporation could no longer make yearly contributions and therefore the fund would have to be liquidated. This fact, he argues, supports his argument that it should have been distributed in kind. Under the facts of this case, the law on reopening the matter for further evidence is appropriately stated in *Ensher, Alexander & Barsoom v. Ensher,* 225 Cal.App.2d 318 [37 Cal.Rptr. 327] where the court on page 326 said: "A motion to reopen a case for further evidence can be granted only on a showing of good cause. [Citation.] . . . Moreover, there was no showing why the evidence could not have been discovered prior to the trial. Appellant did not advance any reason in the trial court for its failure to discover the evidence . . . ." Husband's reason in our present case for his motion was that he was caught by surprise by the court's decision. Not only is this an inadequate reason, but as explained earlier, he should not have been caught napping. Wife built her case around her desire to retain the family home for herself and the children. Husband surely should have known early in the proceedings that if she prevailed the court would have to offset this award to her by distributing other community assets, including the pension fund to him. Husband's proposal to purchase the home would defeat the economic reasons for awarding it to wife. As to the pension fund, the administrator of the plan was asked at the trial if husband had indicated an intention to liquidate it. The answer was "at this time, no." Husband cannot now have a second bite of the apple on this issue merely because he did not anticipate, when he should have, that the pension plan might be distributed to him. There was no abuse of discretion by the trial court in refusing to reopen the case.

That portion of the judgment ordering husband to pay the $22,000 loan obligation as additional spousal support is reversed and the obligation shall be assigned equally to the parties. In all other respects the judgment is affirmed. Wife shall receive two-thirds of her costs on appeal.

Kaus, P. J., and Stephens, J., concurred.

On October 23, 1979, the opinion and judgment were modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied December 6, 1979.