541 A.2d 1378

**James E. HOVIS, Appellant,**

v.

**Mary Lou HOVIS, Appellee.**

Supreme Court of Pennsylvania.

Argued March 7, 1988.

Decided May 20, 1988.

138

Stewart B. Barmen, Denise Wilsher Ford, Rothman, Gordon, Foreman & Groudine, Pittsburgh, for appellant.

Walter A. Koegler, Lynn MacBeth, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue before this Court is under what circumstances potential tax liability should be considered in the valuation of marital property for purposes of equitable distribution under the Pennsylvania Divorce Code, 23 Pa.S.A. § 401(d).

Appellant, James E. Hovis and Appellee, Mary Lou Hovis were married on October 22, 1954. During the marriage Mr. Hovis established a career with Bloom Engineering Company (Bloom), as the President of its international division and a member of its Board of Directors. Mrs. Hovis was a mother and homemaker.

The present action was commenced by Mr. Hovis filing a complaint in divorce in the Court of Common Pleas of Allegheny County, Pennsylvania. On February 16, 1986 the Court granted a decree in divorce. However, the parties' claims for equitable distribution, alimony, alimony pendente lite and counsel fees remained outstanding. Trial was held on October 2, 1985 in order to dispose of these issues.

Although the parties stipulated the value of most of the marital assets, they did not agree to the value of Mr. Hovis' Bloom Corporate stock and pension plan. At trial Mr. Hovis presented testimony that the book value of the Bloom corporate stock was $184.41 per share. Mr. Hovis owned 1,096 shares with a total book value of $202,113.36. Mr. Hovis explained that pursuant to a written shareholder's agreement, upon retirement, he is required to redeem his stock to the corporation at book value. At the time of trial he was sixty-three years of age and planned to retire in May of 1987 at the age of sixty-five.[1] Mr. Hovis stated that

1. There was testimony at trial that Bloom executives normally retire at the age of sixty-five. This was merely an unwritten policy of the

as a result of the sale of the stock he would realize a substantial gain in income in 1987 which would be subject to the prevailing federal capital gains tax rate of 20%[2] and the Pennsylvania state income tax rate of 2.4%. Thus, he testified that the value of the stock should be reduced by 22.4%, representing his potential tax liability.

Similarly, Mr. Hovis offered testimony that the value of his pension plan should be reduced because of potential tax liability. In this regard, William Titus a financial consultant testified on behalf of Mr. Hovis as an expert witness. Mr. Titus explained that he reduced the pension plan to present value using the Troyan Method of present value discounting[3] and deducted 35% of that value for potential income tax liability.[4] He valued the pension after deducting taxes at $170,152.29. Mrs. Hovis presented the expert testimony of an actuary, John Agaston, concerning the value of the pension. Mr. Agaston valued the pension without regarding potential taxes at $305,670.

On January 6, 1986 the trial judge entered an opinion and decree nisi in which he determined the value of the stock and pension plan and deducted 10% of that value from each asset for potential income tax liability. Both parties filed

company and, in fact, the record reflects that Mr. Fred Bloom, Chief Executive Officer and chairman of the board of directors of Bloom remained with the company after his 65th birthday.

2. We note that this 20% rate is the maximum effective tax rate on long-term capital gains for the *1986* taxable year. I.R.C. § 1202 (1980), repealed Pub.L. 99–514 Title III, § 301(a) Oct. 22, 1986. Under the 1986 tax reform act the maximum tax rate on long-term capital gains for non-corporate taxpayers beginning in *1987* is 28%. After 1987 all capital gains will be taxed as ordinary income. I.R.C. § 1(j) (1986). Additionally, upon death, one's heirs receive the subject property without the imposition of capital gains tax.

3. *See,* Troyan, *Pension Evaluation and Equitable Distribution,* 10 Family Law Reptr. No. 4 Monograph No. 1 (Nov. 22, 1983).

4. Mr. Titus was not an accountant and provided no basis for arriving at the 35% tax rate but merely stated that it was his "best estimate of what taxes are likely to represent for Mr. Hovis after his retirement". The trial court did not accept his testimony because it was based upon improper assumptions, for instance that Mr. Hovis was single (he remarried shortly after his divorce) and that the marginal tax rate applied to the entire value of the pension.

exceptions to the opinion and decree nisi. Mrs. Hovis withdrew her exceptions and the trial court dismissed Mr. Hovis' exceptions in a final decree on November 6, 1985. The Superior Court affirmed the decree, 362 Pa.Super. 628, 520 A.2d 68. We granted allocatur and we now reverse.

In reviewing the propriety of an award of equitable distribution we are required to uphold the award absent an abuse of discretion by the lower court. *Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987).

■■ The legislative intent of the Divorce Code is to "make the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience", to "effectuate economic justice between parties who are divorced or separated" and to "insure a fair and just determination and settlement of their property rights". 23 Pa.S.A. § 102 (Purdons, 1980).

In order to achieve these goals the Divorce Code by its terms entrusts the trial judge with wide discretion in fashioning an award of equitable distribution:

In a proceeding for divorce or annulment, the court shall, upon request of either party equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions *as the court deems just* after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

23 Pa.S.A. § 401(d) (1983) (emphasis added). The Pennsylvania statute does not list potential tax liability as a factor to be considered in making an equitable distribution award. *See e.g.,* 13 Del.C.Ann. § 1513(a) (11) (Michie, 1981), and Wisc.Stat.Ann. 767.255 (West, 1979). Nor has this issue previously been decided by this Court.

This case represents the classic quandary that confronts our trial courts regarding the issue of potential tax liability as it effects the equitable distribution of property. If a taxable event such as a sale or other transfer of property is required by the award of equitable distribution, or is certain to occur shortly thereafter, the tax liability of the parties can be reasonably ascertainable. However, where there is merely a likelihood or possibility that a taxable event will occur, the court is left to speculate as to the tax consequences.

In this case Mr. Hovis testified that at age sixty-five he intends to retire and receive his pension benefits and at that time will also be required to redeem his corporate stock. The receipt of pension benefits and redemption of stock are taxable events upon which ordinary income tax and capital gains tax will be imposed. However, if Mr. Hovis dies before retirement, the property passes to his heirs without the imposition of an ordinary income tax or capital gains tax as no taxable event will have occurred. *See* n. 2, *supra.* Additionally, if Mr. Hovis decides not to retire at age sixty-five and continues to work until, say, the age seventy

or seventy-five, the trial court would be unable to reasonably predict what his future tax liability would be because tax rates constantly change.[5] Consequently, a present deduction from the value of a marital asset for future tax liability that cannot reasonably be calculated and, in fact, may never be imposed could result in a windfall to Mr. Hovis and a corresponding disadvantage to Mrs. Hovis.

The trial court abused its discretion, therefore, in deducting 10% of the value of the assets for potential income tax liability before distributing the marital property between the parties. In order to insure a "fair and just determination and settlement of property rights" we favor predictability over mere surmise in the valuation and distribution of marital property after divorce. Accordingly, we hold that potential tax liability may be considered in valuing marital assets only where a taxable event has occurred as a result of the divorce or equitable distribution of property or is certain to occur within a time frame such that the tax liability can be reasonably predicted.[6]

**5.** Indeed, in the last ten years the tax rate on capital gains has ranged from 7% to 49%. Regarding ordinary income tax, before 1986, there were 15 tax brackets with tax rates ranging between 14% and 50%. I.R.C. § 1 (1983) amended by Pub.L. 99–514 Title I § 101(a) (1986). In the 1987 taxable year there is a transitional five bracket rate schedule with rates ranging from 11% to 38.5%. In the 1988 taxable year and the years thereafter, the act provides a two-bracket rate schedule of 15% and 28%. I.R.C. § 1(a) (1986).

**6.** *Accord, Brockman v. Brockman,* 373 N.W.2d 664 (Minn.App.1985) (trial court erred in considering tax consequences where withdrawal of pension plan contributions was not required by dissolution and was not certain to occur within a short time thereafter), and *Burkhart v. Burkhart,* 169 Ind.App. 588, 349 N.E.2d 707 (1976) (court refuses to consider pre-tax stock value where there was a lack of a mandatory transfer and no assurance that the tax would ever have to be paid). *Contra, Marriage of Mulvihill,* 471 N.E.2d 10 (Ind.App.3d Dist.1984), (trial court did not abuse its discretion in valuing a retirement plan by deducting future tax liability because husband will at some point in his life realize tax consequences). Courts in other states refuse to consider tax consequences unless there is proof of an "immediate and specific" tax liability as opposed to tax liability payable in the future. *In re Marriage of Marx,* 97 Cal.App.3d 552, 159 Cal.Rptr. 215 (1979); *Rosenberg v. Rosenberg,* 64 Md.App. 487, 497 A.2d 485 (1985); *Biddulph v. Biddulph,* 147 Ariz. 571, 711 P.2d 1244 (1985).

■ In the present case, withdrawal of the pension funds, redemption of the corporate stock and concomitant recognition of income tax liability were not decreed by the award of equitable distribution and were not certain to occur within a time frame such that tax liability can be reasonably predicted. Therefore, we reverse the order of the Superior Court and remand the case to the trial court for valuation and distribution of the marital assets not inconsistent with this opinion.

PAPADAKOS, J., filed a concurring opinion.

FLAHERTY, J., filed a dissenting opinion in which NIX, C.J., joined.

PAPADAKOS, Justice, concurring.

I join with the majority, but write separately to point out that if Mr. Hovis has, in fact, retired as anticipated in May of 1987 when he reached the age of 65, or since then, actual values should be used rather than estimates as was necessary prior to his retirement.

FLAHERTY, Justice, dissenting.

I respectfully dissent. In my view, the trial judge acted in accordance with the expressed intent of statutory provisions governing equitable distribution of marital property by taking into consideration certain impending tax ramifications relevant to the process of determining a valuation for the shares of stock in question. The judge applied a 10% factor to reflect the likelihood and amount of income tax liability, and, in doing so, it cannot be said that an abuse of discretion occurred.

NIX, C.J., joins this dissenting opinion.