**Stauffer v. Stauffer**

C.P. of Monroe County, no. 5419 CV 2001, no. 736 DR 2001.

*Marshall Anders,* for plaintiff.
*Elvira Labarre,* for defendant.

WORTHINGTON, *J.,* March 2, 2006—Plaintiff, Nellie L. Stauffer (Wife), and defendant, Leonard J. Stauffer (Husband), were married on May 21, 1982. Master's report at 2. On July 24, 2001, Wife filed a complaint seeking a divorce pursuant to sections 3301(c), 3301(d), and 3301(a)(6) of the Pennsylvania Divorce Code, equitable distribution, alimony, alimony pendente lite, counsel fees, costs and expenses. The parties filed affidavits of consent at the initial master's hearing held on June 8, 2005.

Both parties and their respective counsel attended two master's hearings in front of Robert C. Lear, Esquire on

June 8, 2005[1] and June 9, 2005. The master filed a report and recommendations on September 15, 2005. Wife filed exceptions to the report on September 26, 2005 and a memorandum of law in support of plaintiff's exceptions on November 3, 2005. Husband filed exceptions to the report on October 5, 2005 and a brief in support of his exceptions and contra plaintiff's exceptions on November 3, 2005. Argument was held on November 7, 2005 and the exceptions are now before us for disposition.

This was the second marriage for both Husband and Wife. There were no children born to this marriage.

At the time of the hearing, Husband was 73 years of age and in poor health. He had been diagnosed with multiple health problems including diabetes, high blood pressure, coronary artery disease, herniated discs, abdominal aortic aneurysms and bilateral internal carotid artery stenosis.

At the time of the Hearing, Wife was 72 years of age and in reasonable health. Wife testified that she suffered from depression, dizzy spells and fainting.

The master determined that the marital estate was comprised of a small piece of real estate in Troy, Pennsylvania valued at $50,000, three parcels of real estate with a combined value of $245,000, a life insurance policy with a cash value of $32,826, a Chevrolet Impala valued at $8,250, a Honda Goldwing GL Motorcycle worth $16,999, a kit car valued at $3,500, and Husband's inter-

---

1. The hearing was originally scheduled for May 4, 2005, however, upon agreement of counsel, the hearing was continued until June 8, 2005, and an additional hearing date of June 9, 2005 was also scheduled.

est in Stauffer Concrete and Excavating Inc. Report at 13.

Throughout the parties' marriage, Husband served as the owner and operator of Stauffer Concrete and Excavating Inc., which he founded in 1966. The business was incorporated in 1999 when Husband's son, David Stauffer, became active in developing the concrete products portion of the business. At the time of the parties' separation, Husband owned 90 percent of the common stock of the corporation and his son owned the remaining 10 percent.

After hearing extensive testimony with regard to the value of Husband's business, the master recommended that Husband's interest be assigned a value of $283,248. Report at 8. Furthermore, after thoroughly considering the equitable distribution factors in light of the specific facts presented, the master recommended a 55 percent-45 percent distribution scheme favoring Wife. Report at 16.

When we review the recommendations of the master, they are entitled to great consideration because the credibility of the witnesses is an issue. *Herwig v. Herwig,* 279 Pa. Super. 65, 420 A.2d 746 (1980). However, those findings are not binding on the court. *Butler v. Butler,* 423 Pa. Super. 530, 621 A.2d 659 (1993). If the court feels it should deviate from a recommendation, it has the authority to do so, *Morschhauser v. Morschhauser,* 357 Pa. Super. 339, 516 A.2d 10 (1986), because the final responsibility for making the equitable distribution of property rests with the court. *Tagnani v. Tagnani,* 439 Pa. Super. 596, 654 A.2d 1136 (1995). We will, however, affirm the master if the recommendations are sup-

ported by the record. Furthermore, equitable distribution need not be equal, only equitable. *Williamson v. Williamson,* 402 Pa. Super. 276, 586 A.2d 967 (1991).

Section 3502 of the Divorce Code sets forth the factors to be considered by the master in any equitable distribution. The section states in pertinent part:

"(a) General rule.—Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

"(1) The length of the marriage.

"(2) Any prior marriage of either party.

"(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

"(4) The contribution by one party to the education, training or increased earning power of the other party.

"(5) The opportunity of each party for future acquisitions of capital assets and income.

"(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

"(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or apprecia-

534

tion of the marital property, including the contribution of a party as homemaker.

"(8) The value of the property set apart to each party.

"(9) The standard of living of the parties established during the marriage.

"(10) The economic circumstances of each party at the time the division of property is to become effective.

"(10.1) The federal, state and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

"(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

"(11) Whether the party will be serving as the custodian of any dependent minor children." 23 Pa.C.S. §3502.

With these standards in mind, we turn to Wife's eight exceptions to the report. Wife contends that the master erred in:

(1) determining the net asset value of the business;

(2) ignoring good will in determining the net asset value of the business;

(3) determining the value of the kit car;

(4) finding that half of the loan made by Wife to Husband was included in the business valuation;[2]

(5) awarding Wife permanent alimony in the amount of $1,500;[3]

---

2. Husband's second exception will be discussed concurrently.
3. Husband's first exception will be discussed concurrently.

(6) not requiring Husband to pay all of Wife's counsel fees, costs, and expenses;

(7) failing to take into consideration Husband's marital misconduct;

(8) crediting Husband with one-half of the reduction in principal of the business loan from the date of separation to the date of the hearing.

## WIFE'S EXCEPTIONS TO THE REPORT

Wife's first two exceptions relate to the value that the master assigned to Husband's business.

Stauffer Concrete and Excavating Inc. is based in Kunkletown, Monroe County, Pennsylvania, and is located on properties owned either by Husband individually or by the parties jointly as Husband and Wife. Report at 5. The business is managed by both Husband and his son, David Stauffer. *Id.* Husband owns 90 percent of the interest in the business and his son owns the remainder. At the time of the hearing, Husband was serving primarily as the general manager, scheduling excavations, as well as the delivery and installation of septic tanks, whereas his son was heavily involved in the septic tank manufacturing aspect of the business. *Id.*

Wife's first exception is that the master erred in determining the net asset value of the business. Memorandum of law in support of plaintiff's exceptions at 10.

At the hearing, Husband's expert, Bradley W. Hockman CPA, testified that he used a capitalization of earnings approach in order to determine the value of Husband's business. N.T., 6/8/2005 at 70. This particular valuation approach takes into consideration the "his-

torical income of the company and determine[s] what a potential buyer would pay for that income stream." *Id.* at 23. According to Mr. Hockman, Husband's interest in the company was worth approximately $133,000. *Id.* at 78. Alternatively, Wife's business expert, Joseph Egler CPA, MBA, testified that in his opinion the most reliable business valuation approach to use in this particular instance was the net asset value approach, which takes into consideration the market value of the business equipment, as well as the other assets and liabilities. *Id.* at 30. Based upon this approach, Mr. Egler determined that Husband's interest in the company was valued at $360,000. *Id.* at 31.

With regard to the valuation of Husband's business, the master wrote:

"For this type of business, which is basically 'asset heavy,' it would appear that the most reasonable approach would be that the business is worth what the assets are worth (with certain adjustments); which, while rather simplistic, tends to be effective.

"Mr. Egler on page 12 of his report sets forth an adjusted 2000 balance sheet which values total current assets as of December 31, 2000, at $224,548, those current assets consisting of cash, accounts receivable and inventories—manufactured septic tanks. Added to this are fixed assets which basically are the trucks, excavating equipment, etc., which are valued by Capital Asset Services at $488,650—a value which was utilized by both appraisers. This gives total assets of $713,590 and, when total liabilities of $284,664 are subtracted from them, leaves a net of $428,926 as the net asset value without tax and other consequences factored.

"Quite frankly this seems to be the most realistic basis for the sale of the Stauffer enterprise because the buyer is paying for the cash, the receivables, the inventory, and the 'rolling stock'; and does not have to worry about good will which probably is not transferable from Mr. Stauffer to anyone else. In addition, since the business owns no real estate, all of these items will have to be moved to a new location.

"However, the master feels that certain adjustments have to be made to this net asset value approach, and therefore, recasts Mr. Egler's report as follows.

"In regard to current assets as of December 31, 2000, cash is obviously cash and that remains at $62,671. In regard to accounts receivable, the master feels that a 15 percent discount is appropriate which reduces them to $97,943. In regard to the septic tank inventory, probably a slight discount is necessary in that it has to be relocated and the master feels that [a] 10 percent [discount] is appropriate, which lowers that to $41,985 or total current assets of $202,599.

"Addressing the equipment which was valued at $488,650, the master feels that as an incentive to a buyer that a 10 percent discount might be appropriate, thus reducing its value to $439,785 or a total asset value of $642,384. Subtracted from this would be the total liabilities as shown on the adjusted balance sheet as of December 31, 2000, of $284,664 leaving a net of $357,720.

"Obviously, in regard to the sale of the net assets of the business, there would be tax consequences which Mr. Hockman in his report on page 15 calculated in regard to a liquidation value at approximately $43,000, a sufficient approximation for this type of situation. . . .

"[H]ence, Mr. Stauffer's 90 percent interest is worth $283,248." Report at 7-8.

In her memorandum of law, Wife contends that the master erred as a matter of law and committed an abuse of discretion when he made adjustments to Mr. Egler's proposed business valuation. Memorandum of law in support of plaintiff's exceptions at 13. Specifically, Wife avers that the master should not have made adjustments to the accounts receivable, the inventory, or the sales price. *Id.* at 13-14. Wife further argues that the master erred in considering the possible tax consequences associated with the liquidation of the business. *Id.* at 13.

The Divorce Code does not provide a specific method for valuing marital assets; therefore, a trial court "must exercise its discretion, relying upon the estimates and inventories submitted by both parties, the records of purchase prices, and appraisals." *Kohl v. Kohl,* 387 Pa. Super. 367, 373, 564 A.2d 222, 225 (1989). In determining the value of marital property, the trial court is free to accept all, part or none of the evidence as to the true and correct value of the property. *Litmans v. Litmans,* 449 Pa. Super. 209, 220, 673 A.2d 382, 395 (1996), citing *Aletto v. Aletto,* 371 Pa. Super. 230, 537 A.2d 1383 (1988). It is worth noting that a trial court need not accept the uncontradicted testimony of an expert; however, in such a situation, a trial court should at least provide some explanation for its decision to deviate from the expert testimony. *Semasek v. Semasek,* 509 Pa. 282, 289, 502 A.2d 109, 112 (1985).

In the instant matter, the master heard extensive expert testimony concerning the value of Husband's business. There was a difference of approximately $227,000 between the two experts' valuations of the business. Al-

though the master found that the net asset method utilized by Mr. Egler was the more reasonable approach for valuing this particular type of business, he ultimately determined that it was necessary to make certain adjustments to Mr. Egler's proposed valuation in order to effectuate economic justice between the parties. Specifically, the master found that a discount of 15 percent to the business' accounts receivable was appropriate in light of the specific facts presented. The master also discounted the business' septic tank inventory by 10 percent since the business did not own any real estate and, therefore, a potential buyer would have to incur additional costs in order to relocate the entire establishment. Finally, the master decided that a 10 percent discount to the business' equipment would serve as an appropriate incentive to a potential buyer. As we have already indicated, the master, as the fact-finder, was free to accept all, none or part of the testimony presented. In the instant matter, the master chose to accept portions of both experts' reports and then he made certain adjustments as he deemed appropriate in light of the facts presented. After carefully reviewing the evidence, as well as the master's explanations for his adjustments, we find that the master did not err as a matter of law nor did he commit an abuse of discretion when he made certain adjustments to Mr. Egler's proposed valuation.

Wife relies on *Hovis v. Hovis,* 518 Pa. 137, 541 A.2d 1378 (1988), for the proposition that the master erred as a matter of law when he considered the potential tax liabilities in his valuation of Husband's business for equitable distribution purposes. In *Hovis,* the court held that "potential liability may be considered in valuing marital assets only where a taxable event has occurred as a re-

sult of the divorce or equitable distribution of property or is certain to occur within a time frame such that the tax liability can be reasonably predicted." *Id.* at 143, 541 A.2d at 1380-81. (footnote omitted)

On January 28, 2005, the Divorce Code Amendments of 2005 became effective. Of particular significance are the additions of section 3502(a)(10.1) and (10.2). A trial court may now consider the federal, state, and local tax ramifications associated with each asset to be divided, distributed or assigned, *irregardless of whether the consequences are immediate or certain.* 23 Pa.C.S. §3502(a)(10.1). (emphasis added) This language overrules the holding in *Hovis.* Additionally, a trial court may also take into consideration the expense of a sale, the transfer or liquidation associated with a particular asset *even though such expense may not be immediate or certain.* Pa.C.S. §3502(a)(10.2). (emphasis added) In light of the recent changes to the Pennsylvania Divorce Code, we find that the master did not err as a matter of law when he took into consideration the potential tax consequences associated with Husband's business. Wife's first exception is dismissed.

Wife's second exception is that the master failed to take into consideration good will when he calculated the net asset value of the business. Memorandum of law in support of plaintiff's exceptions at 12. Good will is the positive reputation that a particular business enjoys. *Butler v. Butler,* 541 Pa. 364, 378, 663 A.2d 148, 155 (1995). While it is true that good will that is attributable to the business itself is subject to equitable distribution, good will that is intrinsically tied to an individual's attributes and skills is not subject to distribution since such value does not survive the individual's disassociation from the

business. *Butler v. Butler,* 541 Pa. 364, 378, 663 A.2d 148, 155 (1995), citing *Solomon v. Solomon,* 531 Pa. 113, 124-25, 611 A.2d 686, 692 (1992).

In the instant matter, the master determined that the business' good will value was not subject to equitable distribution since it was intrinsically tied to Husband's attributes and skills. "Realistically, in reviewing both of the [expert] reports, the master has come to the opinion that the major value of Stauffer Excavating is not in good will, in that, once the business would be sold and Leonard Stauffer would not be dealing with the customers on a daily basis, certain accounts would leave and new ones would have to be found to fill in the lost revenue." Report at 6-7.

Husband founded Stauffer Concrete and Excavating in 1966, and despite numerous ailments and failing health, Husband has remained an integral part of the business for the past 40 years. At the hearing, Husband's son, David Stauffer, testified that his father is still involved with the business as a consultant. N.T., 6/9/2005 at 56. According to Mr. Stauffer, "the people that need work done go through him. And he will basically say, yea or nay, whether or not it can be done." *Id.* Mr. Stauffer further testified that Stauffer Concrete and Excavating Inc. was "the type of business where if you can't go out there and keep prodding it and pushing it along, it will soon, very quickly go to sleep." *Id.* at 58.

We find that the testimony and evidence presented supports the master's finding that whatever good will the business may possess is directly attributable to Husband. Neither party presented any evidence to support the assertion that the business itself has a positive repu-

tation within the community, and therefore we find that the business does not possess a good will value independent of Husband. Wife's second exception is dismissed.

Wife's third exception is that the master improperly determined the value of the kit car. Memorandum of law in support of plaintiff's exceptions at 16.

During the marriage, Husband and Wife purchased a kit car for approximately $6,500. N.T., 6/9/2005 at 111. Husband testified that he made improvements to the vehicle. *Id.* After the parties separated, the kit car remained in Wife's possession until she sold it for $1,000. N.T., 6/8/2005 at 155. According to Wife, the automobile was in poor condition. *Id.* at 156. "[The kit car] was deteriorated and it was rusting. It had a lot of problems." *Id.* Wife further testified that she "had to get rid of it because [she] was leaving town." *Id.*

Alternatively, Husband testified that the vehicle was in good condition at the time of separation. N.T., 6/9/2005 at 156. In addition, Husband introduced into evidence an advertisement for KitCars.com, which indicated that a similar kit car was being listed for $7,900. Defendant's exhibit no. 15.

In the report, the master addressed the parties' conflicting testimony with regard to the value of the kit car and ultimately reached the conclusion that "Wife's testimony as to the deteriorated condition of the vehicle has weight," however, the "vehicle probably was liquidated too cheaply" and, therefore, he assigned a value of $3,500 to the kit car. Report at 10.

The master's recommendations should be given the "fullest consideration," particularly on issues of credibility, since he is the individual hearing the testimony

and observing the demeanor and appearance of the witnesses. *Kohl v. Kohl,* 387 Pa. Super. 367, 564 A.2d 222 (1989), *affirmed,* 526 Pa. 263, 585 A.2d 463 (1991); *Rorabaugh v. Rorabaugh,* 302 Pa. Super. 1, 448 A.2d 64 (1982). However, we recognize that it is the duty of the trial court to perform a complete and independent review of the evidence presented to the master in order to determine whether his recommendations are appropriate based upon the evidence. *Rollman v. Rollman,* 280 Pa. Super. 344, 421 A.2d 755 (1980). This includes a complete review of the weight and credibility to be given to the testimony of witnesses. In reviewing the record, we must look for "inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias and interest, opposition to incontrovertible physical facts, patent falsehoods and other [facts] by which credibility may be ascertained." *Id.* at 351, 421 A.2d at 758-59.

With the exception of the advertisement from KitCars.com, neither party produced any documentation specifically pertaining to the value of the kit car in question; therefore, the master was forced to determine the value of the car based upon the testimony presented. After listening to the parties' conflicting testimony, the master determined that Wife liquidated the vehicle for less than it was worth. We find that Wife has failed to prove that the master committed an abuse of discretion when he valued the kit car at $3,500. Wife's third exception is dismissed.

We will address Wife's fourth and eighth exceptions and Husband's second exception concurrently since they all concern the master's recommendations pertaining to the loan made by Wife to Husband.

On November 18, 1995, Husband signed a judgment note for $30,000.[4] Defendant's exhibit no. 14. Pursuant to the terms of the note, Husband promised to pay Wife the principal sum of $30,000. *Id.* In addition, Husband was obligated to pay interest on the unpaid principal balance from the date of the note until paid at the rate of five percent per annum. *Id.* According to Wife, Husband borrowed the money from her in order to purchase a piece of equipment for Stauffer Concrete and Excavating. N.T., 6/8/2005 at 15.

After the parties' separation, Wife filed a confession of judgment complaint in an attempt to collect the note. Report at 11. On December 31, 2001, this court entered an order directing that the complaint be consolidated with the pending divorce action and that "both actions shall proceed as one through the divorce side of the court." *Id.*

In the report, the master found that "the piece of equipment was purchased in 1995 and the valuations were done as of the end of the year 2000—approximately six years later. Equipment depreciates rather rapidly and the master is making a reasoned estimate that a $30,000 piece of equipment purchased in 1995 would have a resale value of approximately $15,000 at the close of business in the year 2000. Based on this, the master finds that $15,000 of the loan was included in the business valuation but yet the other $15,000 and the interest at the rate of five percent on the full balance must be paid by Husband to Wife as part of equitable distribution proceedings. This value is $15,000 in principal and $1,500 per year interest from January 1, 1996 (the note being dated mid No-

---

4. It was undisputed that the money loaned by Wife to Husband was entirely premarital in nature.

vember 1995) through June of 2005, or the sum of $14,250." Report, at 12.

Both parties contend that the Master erred as a matter of law and abused his discretion by finding that half of the loan made by Wife to Husband was included in the business evaluation. Memorandum of law in support of plaintiff's exceptions at 17; Defendant's brief in support of his exceptions and contra plaintiff's exceptions, 4. According to Wife, the master should have concluded that the entire amount of the loan was still due and owing to Wife. Memorandum of law in support of plaintiff's exceptions at 17. Alternatively, Husband argues that the master should have found that the entire amount of the loan was included in the business valuation since the funds were used to purchase equipment for the business. Defendant's brief in support of his exceptions and contra plaintiff's exceptions at 5. It is Husband's position that the value of the equipment purchased with the loan was included in the business valuation, and therefore the loan merged into the value of the business for which Wife was already awarded a 55 percent share.

As we have already noted within this opinion, when determining the value of a marital asset or debt, a trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. *Smith v. Smith,* 439 Pa. Super. 283, 297, 653 A.2d 1259, 1265-66 (1995). Furthermore, "[w]here the evidence offered by one party is uncontradicted, the court may adopt this value although the resulting valuation would have been different if more accurate and complete evidence had been presented." *Anzalone v. Anzalone,* 835 A.2d 773, 784 (Pa. Super. 2003).

Capital Asset Services was hired by Wife to appraise the business equipment and machinery. Plaintiff's exhibit no. 1. On November 30 and December 1, 2001, a representative from Capital Asset Services inspected select machinery and equipment owned by Stauffer Concrete and Excavating Inc. *Id.* Capital Asset Services concluded that "the final estimate of the current fair market value of the subject equipment 'as is' as of November 30 and December 1, 2001" was $488,650. *Id.* The fair market value of the equipment as suggested by Capital Asset Services was utilized by both business valuation experts. Report at 7.

Both parties testified that the borrowed funds were used to purchase a piece of equipment for the business; however, neither party was able to testify as to what specific piece of equipment was purchased with the funds. The report prepared by Capital Asset Services indicated that one of the pieces of equipment owned by the business at the time of the appraisal was an excavator manufactured in 1995. Plaintiff's exhibit no. 1. As of December 1, 2001, the fair market value of the excavator was $21,800. *Id.*

Since neither party was able to indicate which piece of equipment was purchased, we are forced to make a determination based upon the evidence in the record. After reviewing the report comprised by Capital Asset Services, we find that it is highly likely that the $30,000 borrowed in 1995 was used to purchase the excavator, which was manufactured in the same year. As a result, we find that $21,800 of the loan made by Wife to Husband was included in the business valuation for which Wife has already received a share. The remaining $8,200 of the loan, as well as the interest on the full principal,

must be paid by Husband to Wife as part of the equitable distribution proceedings. Therefore, Husband owes Wife a total of $22,450, or $8,200 in principal and $14,250 in interest. Wife's fourth and eighth exceptions and Husband's second exception are dismissed.

We will address Wife's fifth and seventh exceptions and Husband's first exception concurrently since they all pertain to the master's recommended alimony award.

At the outset, we note that an alimony pendente lite order was entered in this matter and became effective July 24, 2001. Report at 17. Pursuant to the terms of the order, Husband was ordered to pay Wife $3,700.66 per month.[5] *Id.*

After reviewing the 17 alimony factors in light of the specific facts presented, the master wrote:

"Without revisiting the factors addressed in the previous section of this report concerning equitable distribution, the master finds that the plaintiff's age is an important factor in that she is 72 years of age and, in all probability, capable only of clerical 'minimum wage' type of employment. The duration of the marriage is substantial and the standard of living of the parties established during the 19 years was very fine.

"In addition, the relative needs of plaintiff Wife are those of a woman her age who has enjoyed a decent lifestyle. While marital misconduct was addressed during the course of the hearing, the master does not find that as a significant factor in determining whether alimony is appropriate.

---

5. Husband filed exceptions to the alimony pendente lite order, however, his exceptions were dismissed by the Honorable Linda Wallach Miller by an order entered on March 8, 2002. Report at 17.

"A review of factor 17, 'whether the party seeking alimony is capable of self support through appropriate employment,' is important in that the sum that Wife is receiving through equitable distribution is approximately $186,000,[6] even at a generous 5 percent return, only generates $9,300 per year and this combined with her Social Security and modest pension totaling $670 per month (which is an additional $8,040 per year) leaves her with an income stream from a pension (which will disappear shortly), Social Security, and an assumed 5 percent return on the equitable distribution award of approximately, $17,340 per year. Drawing down the principal balance of the award by approximately $13,000 per year for 14 years increases the income stream to approximately $30,000 per year initially and then slowly decreases as less interest income is available.

"Based on this, the master finds that a permanent alimony award is warranted and recommends to the court that the sum of $1,500 per month form the basis of the award which would then provide plaintiff Wife [a] total income stream of slightly under $50,000 per year for the next 14 years, her approximate life span by the mortality tables." Report at 19-20.

According to Wife, the amount of the recommended permanent alimony award is insufficient. Memorandum of law in support of plaintiff's exception at 21. Wife's position is that the master should have recommended that Husband continue to pay Wife $3,700.66 per month. *Id.* Wife further argues that the master erred as a matter of

6. Based upon the modifications made to the master's recommendations, Wife will be receiving $179,334.77 through equitable distribution. See our discussion of Wife's fourth and eighth exception and Husband's second exception.

law and abused his discretion by not considering Husband's marital misconduct when he fashioned the alimony award. *Id.* at 6. On the other hand, Husband contends that the master erred by recommending a permanent alimony award without making it modifiable due to a change in circumstance. Defendant's brief in support of his exception and contra plaintiff's exceptions at 3.

"[T]he purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment are met." *Teodorski v. Teodorski,* 857 A.2d 194, 200 (Pa. Super. 2004), citing *Moran v. Moran,* 839 A.2d 1091, 1096-97 (Pa. Super. 2003). "Alimony 'is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay.' " *Id.* A trial court must take into consideration the 17 factors enumerated in section 3701 of the Pennsylvania Divorce Code in determining whether alimony is necessary and in determining the nature, amount, duration and manner of payment of alimony. 23 Pa.C.S. §3701. It is important to remember that an award of alimony "following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill." *Teodorski,* 857 A.2d at 200, citing *Moran,* 839 A.2d at 1096-97. (emphasis in original)

With regard to Husband's exception, an alimony award maybe modified when a substantial change in circumstances is established. *Lee v. Lee,* 352 Pa. Super. 241, 507 A.2d 862 (1986). Husband's first exception is dis-

missed as, by law, Husband may petition the court in the future for a modification if appropriate.

At the time of the hearing, Wife was 72 years of age and in reasonable health. Following her graduation from high school, Wife worked as a bookkeeper for several different businesses. N.T., 6/8/2005 at 162-64. Wife testified that she eventually became employed as a computer supervisor at Wick's Lumber. *Id.* at 163. In 1983, after 15 years of service at Wick's Lumber, Wife's department relocated to Chicago, Illinois. *Id.* According to Wife's testimony, it was at this point in time that she and Husband agreed that she would no longer work. *Id.* Since 1983, Wife has been responsible for managing the parties' household. *Id.* at 170. Given Wife's age, health, and employability, we agree with the master's determination that it would be difficult for Wife to obtain more than minimum wage employment.

At the time of the hearing, Wife testified that she receives $617 per month in Social Security in addition to $53.84 per month from her pension, or a combined monthly income of $670.84. N.T., 6/8/2005 at 166-67. In addition, Wife will be receiving $179,334.77 through equitable distribution; therefore, she will be able to use the equitable distribution award, as well as the modest interest income generated from the award to satisfy her financial needs.

According to Wife's income and expense statement, Wife's monthly expenses are approximately $3,735.39. Plaintiff's exhibit no. 19. However, after thoroughly examining the exhibit, we believe that the income and expense statement is less than accurate. In particular, certain monthly expenses listed on the income and expense

statement are excessive, such as allotting $500 per month for vacations. On the other hand, Wife's income and expense statement does not include medical coverage. In the past, Wife's medical coverage was provided by Stauffer Concrete and Excavating, however, following the divorce Wife will have to obtain independent medical coverage. In her memorandum of law, Wife estimates that this will be an additional cost of $400 per month. Memorandum of law in support of plaintiff's exceptions at 21.

After considering Wife's income and expenses, the master recognized that Wife was incapable of supporting herself with only the equitable distribution award; therefore, he recommended that Wife receive a permanent alimony award in the amount of $1,500. Without taking into consideration the equitable distribution award or the interest income generated, Wife will have a monthly income stream of approximately $2,170.84.

In determining the amount of an alimony award, a trial court must consider the reasonable needs of the payee spouse, as well as the ability of the payor spouse to pay. Husband is 73 years old and in poor health; however, he continues to work at Stauffer Concrete and Excavating Inc. In light of Husband's deteriorating health, we agree with the master's determination that "Wife probably has more employability than Husband in that, if the closely held corporation did not exist, Husband would find it virtually impossible to obtain gainful employment." Report at 15. Furthermore, given Husband's recent health problems, it is uncertain how long Husband will be able to continue working for the corporation. Husband's 2003 Federal Income Tax Return indicates that he received an annual salary of $40,560 and $20,558 in Social Security payments; therefore, Husband's monthly income is approximately $5,093. Defendant's exhibit no. 19.

After reviewing the report, it is readily apparent that the master thoroughly considered the relevant alimony factors, Wife's reasonable financial needs, and Husband's ability to pay when he recommended a permanent alimony award in the amount of $1,500 per month. The recommended permanent alimony award effectuates economic justice between the parties. With the permanent alimony award, the equitable distribution award, and Wife's other sources of income, Wife will be able to meet her reasonable needs. Over the last four years, Husband has already paid Wife approximately $180,000 in alimony pendente lite. Once the litigation is over, Wife will no longer be incurring any additional legal fees pertaining to this matter; therefore, it is reasonable for the permanent alimony award to be less than the alimony pendente lite award. Wife's fifth exception is dismissed.

Wife further argues that the master did not take into consideration Husband's marital misconduct in fashioning her permanent alimony award. We disagree with Wife's assertion. In the report, the master indicates that he considered the evidence presented on the issue of Husband's misconduct and ultimately determined that, although it was a factor, it was not a significant factor in fashioning the award. It is important to remember that section 3701 of the Pennsylvania Divorce Code lists 17 factors that should be considered by a trial court when it fashions an alimony award and marital misconduct is only one of those enumerated factors. After reviewing the evidence and the report, we find that the master carefully considered all of the relevant factors in light of the specific facts presented. Wife's seventh exception is dismissed.

Wife's sixth exception is that the master should have awarded her $34,196, the entire amount of her counsel and expert fees.

In the report, the master determined that, "[b]ased on the equitable distribution pattern of 55 percent in Wife's favor versus 45 percent in Husband's, the fact that permanent alimony has been recommended due to plaintiff Wife's age, and the master's desire not to unduly drain Wife's assets and, hence, her income stream, the master feels that an award of $10,000 to cover a portion of her counsel fees, costs and expenses is appropriate." Report at 21.

In determining whether to award a party counsel fees, the trial court must consider the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution. *Adelstein v. Adelstein,* 381 Pa. Super. 221, 553 A.2d 436 (1989). Counsel fees are awarded only upon a showing of need. *Anzalone v. Anzalone,* 835 A.2d 773 (Pa. Super. 2003).

Since July 24, 2001, Wife has received approximately $180,000 in alimony pendente lite from Husband. Alimony pendente lite means alimony or maintenance "pending litigation" and is payable during the pendency of a divorce proceeding so as to enable a dependent spouse to proceed with or defend against the action. *Heilbron v. Heilbron,* 158 Pa. 297, 27 A. 967 (1893). In light of the fact that Wife has already received a significant amount of money over the last four years towards her litigation expenses, we find that the award of $10,000 is more than appropriate. Wife's sixth exception is dismissed.

## ORDER

And now, March 2, 2006, upon consideration of Nellie L. Stauffer (Wife) and Leonard J. Stauffer's (Husband) exceptions to the master's report and recommendations (report) of September 15, 2005, we enter the following order:

(1) Husband and Wife are divorced from the bonds of matrimony.

(2) Wife's first, second, third, fourth, fifth, sixth, seventh, and eighth exceptions are dismissed.

(3) Husband's first and second exceptions are dismissed.

(4) Based upon the modifications to the master's recommendations, Husband shall pay Wife the remaining balance of her share of the equitable distribution award, $179,334.77, plus interest at the legal rate of six percent, within six months from the date of this order.

(5) The remaining recommendations of the master are affirmed and the parties are directed to carry out the terms thereof.