421 A.2d 755

Donald H. ROLLMAN, Appellant,

v.

Lillian K. ROLLMAN.

Superior Court of Pennsylvania.

Argued Dec. 3, 1979.

Filed Sept. 26, 1980.

---

1. Our research has disclosed no cases interpreting Pa.R.Crim.P. 305(E) which became effective January 1, 1978.

William Runyeon, Reading, for appellant.

Lynn E. Stock, Reading, for appellee.

Before PRICE, HOFFMAN and WATKINS, JJ.

**WATKINS, Judge:**

This is an appeal by the appellant–husband, Donald H. Rollman, from the order of the Court of Common Pleas of Bucks County, Civil Division, dismissing appellant's complaint in divorce.

Plaintiff and defendant, husband and wife, were married on September 19, 1959, in Reading, Pennsylvania. After each of the parties had filed and subsequently withdrawn several divorce actions against each other, the plaintiff–husband initiated the instant divorce action against his wife on September 30, 1975. In his divorce complaint plaintiff alleged indignities to the person as grounds for his divorce. Defendant–wife contested the divorce action and extensive masters' hearings were held thereon. On September 22, 1978 the Master filed his report with the court recommending that plaintiff be granted the divorce. Defendant filed exceptions to the Master's Report and, after argument thereon, the Court of Common Pleas sustained two of defendant's exceptions to the report and dismissed the plaintiff's Complaint via an order dated May 8, 1979. Plaintiff now appeals the lower court's May 8, 1979 Order.

The testimony produced by plaintiff at the various Master's Hearings, and accepted as credible by the Master, indicated that defendant had verbally abused the plaintiff over a long period of time, had referred to him as a "nigger lover", "son–of–a–bitch", "whore lover" and other vile names, had refused to engage in sexual relations with the plaintiff for five months prior to their separation, had embarrassed the plaintiff in front of their relatives and friends, on numerous occasions, and had physically abused the plaintiff on several occasions. The Master found that this conduct on defendant's part amounted to indignities to the person, that plaintiff did nothing to justify defendant's conduct, and that therefore plaintiff was the injured and innocent spouse and was entitled to a divorce. The court below, in refusing to accept the Master's recommendation, held that the "plaintiff's credible evidence although somewhat weak, is sufficient to sustain the Master's conclusion

that defendant did commit indignities to the person of the plaintiff" but also held that plaintiff was not an "injured and innocent spouse" and therefore was not entitled to the divorce.

While no general rule can be formulated as to what constitutes indignities in a particular action for divorce it has been held many times that vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule and any other plain manifestation of settled hate and estrangement are sufficient grounds for divorce as they, either individually or collectively, amount to indignities to the person. *Schrock v. Schrock*, 241 Pa.Super. 53, 359 A.2d 435 (1976). We agree with the Master and the court below both of whom held that the above–described conduct of the defendant did constitute indignities to the person of the plaintiff as it made his life burdensome and his condition intolerable. The issue is whether the court below was correct in denying the divorce because the plaintiff's conduct was such that he was not an injured and innocent spouse.

If both parties to a divorce action are nearly equally at fault so that neither party can clearly be found to be the injured and innocent spouse, a divorce will not be granted to either of them. *Mintz v. Mintz*, 258 Pa.Super. 187, 392 A.2d 747 (1978). However, to be the injured and innocent spouse, for purposes of a divorce, a party need not be totally free from fault. *Rensch v. Rensch*, 252 Pa.Super. 294, 381 A.2d 925 (1977). This is especially so in a situation where the conduct of the party seeking the divorce was provoked by the other spouse. *Rhinehart v. Rhinehart*, 197 Pa.Super. 558, 180 A.2d 82 (1962).

The court below found that plaintiff's conduct was such that he could not be said to be the injured and innocent spouse because evidence was produced at the Master's Hearing tending to show that he would go out drinking on the average of once every other week and that his drinking became a major problem in their marriage in that plaintiff would often talk loudly to defendant and her son when he

came home from drinking and make humiliating and degrading statements to her especially about her weight. While intemperance and drunkenness does not excuse a party from improper conduct it is not, in and of itself, a ground for divorce. *Cowher v. Cowher*, 172 Pa.Super. 98, 91 A.2d 304 (1952). And while habitual drunkenness may be relevant evidence in a divorce action since it tends to establish the regard (or lack of it) which the spouse has for the other spouse it is also not in and of itself, a sufficient ground to deny a divorce to a spouse if the conduct of the other spouse is so severe that it contributed to or provoked the excessive drinking. In the instant case it was merely established that the plaintiff would go out drinking once every two weeks. This evidence certainly did not amount to habitual drunkenness. Thus we must turn to other conduct of the plaintiff to determine whether his conduct towards defendant was such that he should have been denied a divorce.

The defendant testified that plaintiff would often use humiliating and abusive language towards her, especially abusing her about her overweight condition, that her conduct towards the plaintiff was provoked by his drinking and his poor work habits, and that he told her he was seeing other women during their marriage. On one occasion he had his paycheck stolen by a prostitute, although there was no evidence to show that he had had sexual relations with her. In any event, plaintiff presented much testimony indicating that the defendant had rejected him sexually and he denied that he had ever had sexual relations with another woman prior to the parties' separation. Plaintiff admitted that he had argued and fought with defendant on occasion but his testimony indicated that his drinking was not the cause of the parties' marital problems but, in fact, he began to drink more heavily because of the defendant's conduct towards him. In short both parties presented sufficient testimony to the effect that the other was at fault for their domestic difficulties. In his Master's Report the Master specifically stated that he found plaintiff's testimony to be credible. The issue of credibility of witnesses in a divorce case is not

entirely to be resolved by the Master. The court has the duty to make a complete and independent review of all the evidence presented in a divorce action. This includes a complete review of the weight and credibility to be accorded to the testimony of the witnesses. *Riley v. Riley*, 246 Pa.Super. 265, 369 A.2d 1314 (1976). The reviewing court must examine the record in detail so as to discover inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias and interest, opposition to incontrovertible physical facts, patent falsehoods, and other factors by which credibility may be ascertained. *Ryave v. Ryave*, 249 Pa.Super. 78, 375 A.2d 766 (1977). However, where the issue is one of credibility and the Master is the one who heard the testimony and observed the demeanor of the witnesses the reviewing court must give his findings regarding credibility the fullest consideration. *Schrock v. Schrock*, supra; *Ryave v. Ryave*, supra. In the instant case the court below recognized these principles and conducted a searching review of the record. In certain instances it finds that the plaintiff's testimony was "shaken" by the testimony of the defendant and the testimony of defendant's sister—in—law and plaintiff's mother in that they all testified that plaintiff admitted to them that the prostitute had stolen his paycheck. The court held that the involvement with the prostitute contradicted defendant's claim that he had never had sexual relations with another woman prior to the separation of the parties. We do not agree. Even if accepted as true, the testimony of defendant and the other witnesses merely showed that plaintiff had *intended* to engage the services of the prostitute but that she had stolen his paycheck prior to any illicit activities having occurred. While this was surely relevant evidence tending to show plaintiff's attitude towards the marriage and the defendant, this single incident, even if true, would not be sufficient, standing alone, to deprive plaintiff of his standing of being the injured and innocent spouse, in light of the defendant's conduct towards plaintiff, and in light of the fact that plaintiff denied having illicit sex prior to the separation and the Master found his testimony credible.

■ Because the Master found plaintiff's testimony to be credible and because plaintiff's testimony, if believed, would render him the injured and innocent spouse and because a review of the record fails to establish the type of inherent inconsistencies and contradictions which would improve the threat of plaintiff's testimony we find that the court below failed to give the fullest consideration to the Master's findings regarding credibility. As such we find that plaintiff is the injured and innocent spouse.

■ Defendant raises several questions regarding the state of the transcript. At one point plaintiff's attorney objected to a question proposed to defendant by defendant's attorney and the Master sustained the objection which defendant argues was an incorrect ruling. However, a review of the record reveals that defendant's attorney rephrased her question and the information sought of the witness was elicited. No reversible error occurred here. On another occasion, defendant's attorney objected to a question asked of defendant on cross–examination, by plaintiff's attorney and the Master made no ruling thereon. However, the record reveals that the question was never answered by defendant and plaintiff's attorney then asked defendant another question, abandoning the original question. No error occurred here. Finally defendant's attorney argues that the transcript is incomplete and that a hearing was held before the Master prior to the one of February 21, 1977, the hearing transcript of which is missing. On February 21, 1977 the Master began the hearing and permitted plaintiff's attorney to begin "the matter of the indignities" without first eliciting the usual preliminary information. However, on March 2, 1977 the second hearing was held at which this information was elicited. Defendant's attorney was not present at this hearing which had been set up for 4:00 P.M. by the Master. The time and date of the second hearing was set by the Master, *on the record*, after the first hearing. The second hearing began on the appointed date at 4:21 P.M. after giving defendant's attorney ample time to appear. A review of the entire record reveals a record which appears to be complete. Both plaintiff and defendant had the opportu-

nity to testify, cross-examine each other through counsel, and present their own witnesses. The testimony elicited at the March 2, 1977 hearing was basically background information and did not provide the dominant reasons behind the Master's finding on indignities. In addition the defendant, in claiming in her brief that part of the record is missing, fails to allege what was said at such hearing and how it would affect the outcome of the case. Under these circumstances considering the apparent completeness of the transcripts, we will not remand this case in order to produce a transcript that may not exist. In all likelihood, the "missing" transcript may be the one of the March 2, 1977 hearing at which hearing defendant's attorney did not appear. Because the testimony produced at that hearing did not constitute the most important part of plaintiff's cause of action we hold that defendant was not prejudiced by her counsel's failure to appear by said hearing.

Order of court below reversed and divorce awarded to the plaintiff.

PRICE, J., notes dissent.