## Kimmel v. Kimmel

C.P. of Lawrence County, No. 11135 of 2010, C.A.

*Charles S. Cusick, Jr.*, for plaintiff.
*John J. Bongivengo*, for defendant.

HODGE, *J.*, October 31, 2013—Before the court for disposition are competing exceptions to the report and recommended order entered by the equitable distribution master. The plaintiff, Susan L. Kimmel (hereinafter, "wife"), and the defendant, Randall D. Kimmel (hereinafter, "husband"), were married on September 15, 1984 and separated in October, 2008. Wife is currently 52 years old. During the course of the parties' marriage, wife served primarily has a homemaker and caregiver for the parties' minor children. Following the parties' separation, wife began working in the retail sector, which eventually resulted in working for Nordstrom's Department Store as a personal stylist. Wife receives a minimal base salary, and her compensation is largely dependent on her commission. Husband is currently 55 years old. Husband initially worked in a family owned business with his father and brother, Big K Liquidators. Following the parties' separation, husband began his own business, SBK Liquidators. In July 2011, husband was no longer able to run SBK Liquidators at a profit, and he attempted to work for various companies. Husband ultimately obtained employment with Family Dollar as a store manager.

The majority of the parties' marital assets subject to equitable distribution include their marital residence

and various IRAs, savings and investment accounts and vehicles. The marital debt is comprised of a mortgage on the marital residence and a home equity line of credit. Following several days of equitable distribution hearings, the master entered a report and recommended order dividing the marital estate. Pursuant to the master's recommendations, wife was awarded the marital residence, provided wife made a lump sum payment to husband. The IRA and savings accounts were liquidated and distributed to the parties. Additionally, wife was awarded alimony and counsel fees.

The parties each filed timely exceptions to the master's report and recommendations. Wife contends that the master committed the following errors:

1. The master erred in permitting husband to testify as to his reasonable monthly expenses.

2. The master erred in his determination of husband's reasonable and necessary monthly expenses.

3. The master erred in his valuation of the manulife account, the Pioneer IRA, Big K and SBK Liquidators.

4. The master erred in determining that a post separation withdrawal in the amount of $15,908.00 was used for marital purposes and by assigning this debt to wife.

5. The master erred in his valuation of the fair rental value of the marital home.

6. The master erred in his determination of husband's annual earning capacity.

7. The master erred in recommending that wife borrow additional money when refinancing the marital residence to provide husband with a lump sum equitable distribution

payment.

8. The master erred in limiting wife's alimony award to $1,000.00 per month for one year and $800.00 per month for the following six years.

Husband asserted the following sixteen exceptions to the master's report and recommendations:

1. The master erred in his valuation of the marital portion of the Pioneer IRA account.

2. The master erred in his valuation of the marital portion of the Manulife account.

3. The master erred in his valuation of the SBK Liquidator's account.

4. The master erred in determining the Schneider Roth IRA is partially non-marital property.

5. The master erred in determining that wife took $10,709.42 from a marital account and used the funds to open a separate IRA.

6. The master erred in failing to provide husband with a $2,293.75 offset for additional funds wife withdrew from the parties' joint Janney Montgomery account.

7. The master erred in awarding the entire Schneider Roth IRA account to wife.

8. The master erred in awarding wife a portion of the SBK Liquidator account.

9. The master erred in determining that the 2007 BMW has any marital value.

10. The master erred in determining that the 2011 Mercedes has any marital value.

11. The master erred in determining that the 2003 Audi has any marital value.

12. The master erred in his valuation of the marital residence.

13. The master erred in awarding wife 62.5% of the equity from the marital residence.

14. The master erred in awarding wife alimony.

15. The master erred in awarding wife counsel fees.

16. The master erred in requiring husband to obtain life insurance to secure wife's alimony award.

In disposing of these exceptions, the court observes that while a master's report is advisory only, it is to be given great deference. *Fiorelli v. Fiorelli*, 195 A.2d 369 (1964); *Morschhauser v. Morschhauser*, 516 A.2d 10 (1986). A reviewing court has a duty to make a complete and independent review of the proceeding below. *Rollman v. Rollman*, 421 A.2d 755 (1980).

In reviewing master's considerations, the report should be given "fullest consideration" particularly on issues of credibility. *Kohl v. Kohl*, 564 A.2d 222 (1989). The review is intended to discover inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias, interest, and opposition to incontrovertible physical facts by which credibility may be ascertained. *Rollman, supra*. However, because the master is the person hearing the testimony and observing the demeanor and appearance of the witness, any issue of credibility must be resolved by giving the master's findings the fullest consideration. *Rorabaugh v. Rorabaugh*, 448 A.2d 64 (1982). With this standard in mind, the following is a discussion and

disposition of the parties exceptions.

Wife's Exception 1

Wife's first exception contends that the master erred in permitting husband to testify as to his reasonable monthly expenses because husband failed to include an expense statement in his pre-trial statement. Rule 1920.33 of the Pennsylvania Rules of Civil Procedure precludes a party from offering testimony or evidence regarding his or her monthly expenses if they fail to file a rule 1910.27 (c) (2) (B) expense statement. Rule 1920.33 is mandatory in nature, and leaves little discretion for the trier of fact to circumvent the rule's requirements. This court has established a strict adherence to Rule 1920.33 in prior cases. *See e.g. Wetzel v. Wetzel*, No. 11925 of 2009, C.A. (a party who fails to comply with rule 1920.33 shall be precluded from offering any testimony or introducing evidence in support of his or her economic claims).

The court concludes that it was error for the master to permit husband to testify as to his reasonable monthly expenses.

Wife's Exception 2

Wife's second exception compounds her first by arguing that the master erred in his determination of husband's reasonable and necessary monthly expenses because the master improperly considered testimony offered by husband in this regard. Also the master offered husband significant leniency in the testimony husband offered to establish his living expenses, the court finds harmless error occurred. Wife's exception 2 is therefore denied.

Wife's Exception 3

Wife next takes exception to the master's valuation of the Manulife account, the Pioneer IRA, and the Big K and SBK Liquidators accounts. Husband also takes exception to the master's valuation of the Pioneer IRA, Manulife stock and SBK Liquidators account in his first, second and third exceptions. Wife contends that each of these assets are in the exclusive possession and control of husband. Wife argues that, because husband failed to establish a pre-marital value for any of these assets, their value is entirely marital in nature. Husband alternatively argues that these assets are entirely non-marital property and should not have been subject to equitable distribution.

This court has very recently addressed the issue of who carries the initial burden of production in valuating an asset at the time of marriage. *See Boyd v. Boyd*, No. 10104 of 2011, C.A. (Court of Common Pleas of Lawrence County, October 7, 2013). In *Boyd*, wife requested that husband carried the burden of establishing the premarital value of husband's business at the time of equitable distribution. Husband objected to the court placing a burden upon him, and he argued that wife was free to present whatever evidence she deemed necessary to establish the business' value as of the date of marriage. *Id.* at 2. This court ultimately determined that because husband maintained exclusive control and possession over the evidence necessary to establish a pre-marital value for his business, husband carried the initial burden of production. *Id.* at 4 (citing *Smith v. Smith*, 653 A.2d 1259, 1265-66 (Pa. Super. 1995). This court also stated, however, that if husband failed "to offer sufficient evidence to establish a premarital value, the Equitable Distribution master can properly accept wife's evidence as credible." *Id.* at 5.

Applying the same standard this court adopted in

*Boyd* to the case *sub judice*, and after the court reviewed the transcripts from the equitable distribution hearings, the court determines that the only competent evidence offered to the equitable distribution master regarding the subject accounts was their present day value. Thus, neither husband nor wife presented sufficient evidence to succinctly establish the pre-marital value of the accounts in question. The master utilized the present value to establish the marital value of the accounts by multiplying the present value by the length of marriage and dividing this value by the length of the applicable account's existence. The master applied a similar valuation method to determine the marital portion of the Big K and SBK Liquidators accounts. *See* master's report, pp. 35-36. The court finds no error in the master's findings of fact and corresponding analysis. Wife's exception 3 is therefore denied.

Wife's Exception 4

Wife's fourth exception contends that the master erred in designating a post separation withdrawal in the amount of $15,908.00 as marital debt and by assigning this debt to wife.

On page 41 of the master's report, the master concludes that husband used a portion of the $15,908.00 drawn from the home equity line of credit to pay for their children's college tuition. The master's conclusion is supported by the notes of testimony and factual findings set forth on page 23 of the master's report. The master justified assigning the debt as marital because the funds were used for the benefit of the parties' children, and the master declined to credit the draw to husband's equitable distribution award. The master's determination, however, is inconsistent with Pennsylvania case law in determining that the debts

of a spouse acquired after separation cannot be enforced against the opposing spouse or the marital home. *Fidelity Bank v. Carroll*, 610 A.2d 481, 483 (Pa.Super. 1992). Wife's exception 4 is therefore granted.

Wife's Exception 5

Wife next asserts that the master erred in establishing a fair rental value for the marital residence because this issue was not raised by either party prior to or during the equitable distribution hearings. A thorough review of the master's report indicates that the marital residence was valued after considering an appraisal from January, 2013, and each of the parties' respective opinions regarding the marital residence's fair market value. *See* master's report, pp. 18 and 40. The master's discussion of distributing the equity and debt associated with the marital residence is found on pages forty through forty-one of his report. In footnote ten of the master's report, the master provides:

> The master shall use the current balance owed on the mortgage for valuation purposes because the master finds that wife's habitation of the home and payments of the mortgage and costs related to the home are offset by husband not receiving an award for fair rental value of the residence.

Master's report, p. 40, n. 10.

The master's conclusion, as set forth above, establishes why the master determined that using the current balance of the mortgage versus the mortgage balance as of the date of separation was appropriate. The master acknowledged that wife made all mortgage payments since the parties' separation because she continued to reside in the residence. This is consistent with the support requirements

and guidelines. *See* Pa.R.C.P. 1910.16-6(e). The master determined that allocating the equity established by wife's mortgage payments against wife was appropriate because wife received the sole benefit of living in the marital residence since separation. The court finds no error in the master's analysis. *See Gee v. Gee*, 460 A.2d 358 (Pa. Super. 1983). Wife's exception 5 is therefore denied.

Wife's exception 6

Wife next contends that the master erred in his assessment of husband's annual earning capacity. Wife argues that the master under-valued husband's annual earning capacity in reaching an ultimate determination regarding alimony.

The master succinctly summarized husband's employment history on pages nine through twelve of his report. Husband was the primary wage earner during the course of marriage. While working with his father and brother, husband successfully operated a furniture business and wholesale supplies business. Husband was unable to maintain a business venture with his brother after their father passed away in October 2009. Thereafter, husband started his own business, SBK Liquidators, selling wholesale groceries. Husband stated that he could no longer operate his business because he lost his main supplier in 2011. Thereafter, husband utilized his business to sell furniture and scratch and dent items.

In June 2013, husband became employed as a manager with Family Dollar. Husband's current salary is $44,500.00 annually. The master arrived at husband's monthly income by dividing his annual salary by twelve ($44,500.00/12 = $3,708.00). Wife contends that husband should be assessed a higher earning capacity because he maintains

the ability to supplement his salary by continuing to sell furniture and wholesale items, consistent with his conduct in 2012. Wife's argument is consistent with this court's prior determination following a denovo support hearing and subsequent order entered on May 18, 2012, which assessed husband's net monthly earnings at $4,526.00.

The master considered husband's skills and experience in the wholesale business in assessing husband an earning capacity of $85,000.00. Although wife argued that husband's earning capacity is in excess of $100,000.00, the court finds the master's conclusion to be appropriate. The court makes this finding based upon the fact that husband is currently employed full time as a store manager for Family Dollar. Husband has appropriately obtained other employment following the loss of his business. Alternatively, husband still possesses the knowledge and skill necessary to supplement his salary as he did in 2012. For this reason, the court finds that the master properly assessed husband an earning capacity of $85,000.00. Wife's exception 6 is therefore denied.

Wife's Exception 7

Wife's seventh exception contends that the master erred by requiring wife to make a lump sum payment to husband to satisfy the global economic distribution. Although the master awarded the marital residence to wife, the master's recommendation specified that upon refinancing the marital residence, wife should borrow an additional $13,437.89 to satisfy the lump sum awarded to husband. *See* master's report, p. 42.

Wife's seventh exception correlates to her fourth exception because husband's withdrawal against the home equity line of credit in the amount of $15,908.50 was

ultimately assigned to wife by requiring wife to assume full responsibility for the remaining mortgage and home equity loan. Wife does not contest her responsibility to pay the $2,950.00 husband withdrew and used to make repairs to the marital residence, but wife argues that if the master properly assigned the remaining balance of the post-separation withdrawal to husband ($12,958.50), wife would not owe husband a lump sum payment.

Based upon the court's review of wife's exception 4, the court finds that it is appropriate to grant wife's exception 7, which would otherwise result in a $479.39 ($13,437.89 — $12,958.50) distribution in husband's favor. The court will address the adjustment in the remaining portion of this opinion.

Wife's Exception 8

Wife's last exception asserts that the master erred in limiting wife's alimony award to $1,000.00 per month for one year and $800.00 per month for the following six years. Husband also takes exception to the master's recommendation regarding alimony in husband's exception 14. The court has thoroughly reviewed the master's report where he specifically addresses each of the seventeen factors set forth in section 3701 of the divorce code. The court finds that the master carefully considered all of the relevant factors and placed appropriate weight in reaching an overall recommendation regarding alimony. Wife's exception 8 is therefore denied.

Having disposed of wife's exceptions to the master's report and recommendation, the court turns to husband's exceptions. In his brief to the court, husband consolidated his exceptions as set forth above. The court will therefore address husband's exceptions in a similar manner.

Husband's Exceptions 1, 2 and 3

Husband's first three exceptions all contend that the master erred in establishing the marital component of the Pioneer IRA account; the marital portion of the Manulife account; and the marital portion of the SBK Liquidator's account. The court previously addressed these issues in wife's exception 4. The court fully incorporates its findings of fact and conclusions as though fully set forth herein. Husband's exceptions 1, 2, and 3 are therefore denied.

Husband's Exception 4

Husband's fourth exception contends that the master erred in determining that the Schneider Roth IRA is partially non-marital property belonging to wife. Husband supports his contention by arguing that wife established the IRA with money wife received from her father and with funds taken from a marital account. Husband believes that the entire IRA should be characterized as marital in nature because wife co-mingled marital and non-marital assets.

In general, when inherited funds are co-mingled with marital funds, it is permissible to conclude that the entirety of the funds is marital property. *Verholek v. Verholek*, 741 A.2d 792 (Pa. Super. 1999). However, an exception can be made if the non-marital portion of the funds can be appropriately traced back to their original source. *Busse v. Busse*, 921 A.2d 1248 (Pa. Super. 2007). Additionally, when considering whether an asset is marital property the court must consider the parties' intent. *Barner v. Barner*, 527 A.2d 122 (Pa. Super. 1987).

The master addressed the Schneider Roth IRA on pages 33 and 34 of the master's report. The master determined that the IRA was established from funds wife received

from her father and from $10,709.72 wife withdrew from a separate marital account. The master ultimately considered the $10,709.72 as an equitable advance to wife. The master further concluded that in order to promote an overall equitable distribution of marital assets the entire IRA should be distributed to wife.

After reviewing the master's recommendation, the court finds no error in the master's analysis. The master was able to accurately trace all funds contained in the Schneider Roth IRA. Further, the master determined that wife placed marital funds into her IRA following separation to make payments on the parties' home equity line of credit. Husband never had access to the IRA. Thus, it is proper to conclude that wife never intended to treat the IRA as marital property. Husband's exception 4 is therefore denied.

Husband's Exception 5

Husband next contends that the master erred in determining that wife took $10,709.42 from a marital account and used the funds to open a separate IRA. As discussed in husband's fourth exception, the court determined that the master properly traced the assets contained in the Schneider Roth IRA prior to making a determination regarding the allocation of the IRA. The record clearly supports the master's conclusion that $10,709.42 was withdrawn by wife from the parties' Janney Montgomery account. Husband's exception 5 is therefore denied.

Husband's Exception 6

In his sixth exception, husband alleges that the master erred in failing to provide husband with a $2,293.75 offset

for additional funds wife withdrew from the parties' joint Janney Montgomery account. Husband argues that wife used these funds to pay for the marital residence while having exclusive possession of said residence. Husband seeks credit against equitable distribution for wife's withdrawal.

The master determined that because wife applied the funds against the existing home equity line of credit, husband was not entitled to an offset for wife's withdrawal. *See* master's report, p. 32. The court finds that the master's conclusion was appropriate given the fact that wife applied the marital funds to a marital debt. Husband's exception 6 is therefore denied.

Husband's Exception 7

Husband next argues that the master erred in awarding the entire Schneider Roth IRA account to wife. Husband's seventh exception has been previously discussed in husband's exceptions 4 and 5. Consistent with the court's prior analysis, husband's exception 7 is denied.

Husband's Exception 8

In his eighth exception, husband argues that the master erred in awarding wife a portion of the SBK Liquidator account. Husband established his SBK Liquidators business in October of 2009, one year after the parties' separation. The record and master's report do not indicate that husband started this business with any marital funds or assets received from husband's prior business endeavors. *See* master's report, pp. 9-10 (husband received no compensation upon leaving Mr. Office and Big K). The master further finds that SBK Liquidators was not generating any sale or income at the time of the parties'

separation. *Id.* at 30. The master's conclusion is consistent with the evidence establishing that husband started SBK Liquidators after separation. The master further concluded that it was inappropriate to assign any marital value to husband's SBK Liquidator's account. *Id.* at 39. However, the master's ultimate recommendation was inconsistent with his factual findings and conclusions because the master assigned $5,231.46 to Wife from husband's SBK Liquidator's account. The master reasoned that the approximate value of this account consistently carried a value of $8,719.10 throughout 2011. The master then assigned 60% of the $8,719.10 balance to wife because "this is the balance that should have existed in the account...as of the date of separation." *Id.* at 36.

The court finds that assigning any marital value to the SBK Liquidator's account is error. It is further error to distribute any of this account to wife. Husband's exception 8 is therefore granted. The court will address the redistribution of these funds in its final analysis.

Husband's Exceptions 9, 10 and 11

Husband exceptions 9, 10 and 11 contend that the master erred in assigning marital value to the parties' 2007 BMW, 2011 Mercedes and 2003 Audi. The parties purchased a 2007 BMW during the course of marriage. Following the parties' separation, husband sold this vehicle and used the proceeds to purchase a Range Rover for one of the parties' children. Similar to the court's disposition of wife's exception 4, the court determines that because the 2007 BMW was sold following the separation and applied to a non-marital asset, the debt is properly assigned against husband. The court specifically differentiates husband's conduct from wife's withdrawal

from the parties' Janney Montgomery account because wife applied the funds to a marital debt. If husband had sold the 2007 BMW and purchased a subsequent vehicle for his son prior to separation, husband's exception would be warranted. However, because husband sold the vehicle post-separation, the court finds that the master properly assigned some marital value to the 2007 BMW to wife. Husband's ninth exception is therefore denied.

The court adopts a similar rationale to justify the master assigning marital value to the 2011 Mercedes and 2003 Audi. Husband's exceptions 10 and 11 are also denied.

Husband's Exception 12

Husband's next exception contends that the master erred in his valuation of the marital residence. Husband asserts that the master erroneously considered wife's testimony regarding the current value of the marital residence because husband offered an expert appraisal in support of a higher valuation. The appraisal was performed on January 3, 2013.

Wife's testimony establishes that the appraisal fails to consider various deficiencies regarding the current condition of the residence. Wife referenced the facts that the windows need replaced; various plumbing problems exist in the kitchen and one of the bathrooms; and the garage doors need replaced. Husband's own pretrial statement and testimony contend that the marital residence has a present value of $185,000.00. Husband's valuation of the marital residence is consistent with that of the master. Husband's twelfth exception is therefore denied.

Husband's Exception 13

The master erred in awarding wife 62.5% of the equity

from the marital residence. The court has extensively addressed the master's valuation and distribution of the equity assigned to the marital residence in its prior analysis. The court fully incorporates its previous findings. Husband's exception 13 is denied.

Husband's Exception 14

*See* wife's exception 8. The court incorporates its findings as thorough fully set forth herein. Husband's exception 14 is denied.

Husband's Exception 15

Husband's fifteenth exception states that the master erred in awarding wife counsel fees. A thorough review of the master's report indicates that the master properly considered the applicable case law and equitable factors in awarding wife attorney's fees in the amount of $3,000.00. However, given the court's findings with respect to wife's exception 7 and husband's exception 8, the court finds that attorney's fees are not longer warranted.

As previously indicated the court made the following adjustments to the equitable distribution recommendations of the master:

a) Not requiring wife to make a lump sum payment to husband in the amount of $13,437.89 based upon the court's assessing $12,958.50 against husband as set forth below.

b) Reassigning the sum of $12,958.50 husband withdrew from the parties' home equity line of credit against husband.

c) Not assigning any marital value to husband's SKB

Liquidator's account, which resulted in a distribution of $5,231.46 in husband's favor.

The court's adjustments result in an overall distribution in the amount of $5,710.85 in husband's favor. By granting husband's fifteenth exception and not requiring husband to pay wife $3,000.00 in attorney's fees, husband is left with a net equitable distribution lump sum award of $2,710.85.

Husband's Exception 16

Husband's last exception contends that the master erred in requiring husband to obtain life insurance to secure wife's alimony award. The court finds no basis in husband's last exception, as 23 Pa.C.S.A. §3502(d) specifically permits the court to direct one party to purchase a life insurance policy and assign beneficiary designations to protect the interest of the other party. Husband's exception 16 is therefore denied.

Consistent with this opinion the court will enter the following order of court:

ORDER OF COURT

And now, this 31st day of October, 2013, with this matter being before the court for arguments on competing exceptions to the report and recommendations of the equitable distribution master, with Charles S. Cusick, Jr., Esquire, appearing on behalf of the plaintiff, Susan L. Kimmel, and with John J. Bongivengo, Esquire, appearing on behalf of the defendant, Randall D. Kimmel, and with the court considering the exceptions filed on behalf of the respective parties, in addition to thoroughly reviewing the report and recommendations of the equitable distribution master, the court makes the following findings and hereby orders and decrees as follows:

1. Plaintiff's/wife's exception 1 is granted.

2. Plaintiff's/wife's exception 2 is denied.

3. Plaintiff's/wife's exception 4 is granted.

4. Plaintiff's/wife's exceptions 5 and 6 are denied.

5. Plaintiff's/wife's exception 7 is granted.

6. Plaintiff's/wife's exception 8 is denied.

7. Defendant's/husband's exceptions 1, 2, 3, 4, 5, 6, and 7 are denied.

8. Defendant's/husband's exception 8 is granted.

9. Defendant's/husband's exceptions 9, 10, 11, 12, 13, 14, are denied.

10. Defendant's/husband's exception 15 is granted.

11. Defendant's/husband's exception 16 is denied.

12. Consistent with the court's findings as stated in the attached opinion, the overall adjustments to the total equitable distribution award results in wife owing husband a lump sum payment of $2,710.85.

13. Husband's lump sum award shall be applied directly to the fees husband currently owes to the equitable distribution master in the amount of $2,869.53. Wife shall deposit the sum of $2,710.85 with the office of the prothonotary within thirty (30) days from the date of this order of court.

14. Husband shall immediately pay the balance owed on the equitable distribution master's fees in the amount of $158.68.

15. All other provisions of the master's recommended

order, not inconsistent with this order of court, are affirmed and fully incorporated herein as a final order of court.

16. The prothonotary shall properly serve notice of this order of court upon counsel of record for the parties and upon any unrepresented party at their last known address as contained in the court's file.