## Osborne v. Osborne

C.P. of Lawrence County, No. 11099 of 2010, C.A.

*Shawn B. Olson*, for plaintiff.
*Deborah A. Shaw*, for plaintiff.

HODGE, *J.*, Sept. 30, 2014—Before the court for disposition are exceptions to the report and recommended order of the equitable distribution master. The plaintiff, Tracey Osborne (hereinafter, "wife"), and the defendant, Wesley Osborne (hereinafter, "husband") were married on August 30, 1986 and separated on July 8, 2010. Wife is currently 50 years old. During the course of the parties' marriage, wife worked as a Radiograph Technician, and wife financially contributed to the parties' marriage. Wife continues to maintain full-time employment as a Radiograph Technician. Husband is currently 49 years old. Husband initially worked at a landscaping company and served as the primary wage earner. During the marriage, husband expanded his level of education at Penn State University and established several businesses relating to lawn service and contracting and wildlife control.

The parties own substantial marital assets, which are subject to equitable distribution. Their assets include fifteen pieces of real property valued at $1,184,000.00. The parties additionally owned personal property, vehicles

and proceeds from an oil and gas lease. The marital debt is comprised of several mortgages, and personal and business loans. The marital debt equals approximately $415,597.16. Following several days of equitable distribution hearings, the master entered a report and recommended order dividing the marital estate. Pursuant to the master's recommendations, wife was awarded specific pieces of real property, a lump sum equitable distribution award, counsel fees and spousal support.

Husband timely filed exceptions to the master's report and recommendations. Husband contends that the master committed the following errors:

1. The master erred in awarding wife the following real property:

a. 294 Bedford Road, Pulaski Township;

b. 4857 Hillsville Road, Pulaski, PA;

c. 1927 State Route 208, Pulaski, PA; and

d. Tionesta Camp, Forest County, PA.

2. The master erred in assigning the full obligation for the following loans/lines of credit to Husband:

a. First Commonwealth Bank Consolidation loan;

b. Wells Fargo loan;

c. First Commonwealth Bank Commercial loan;

d. First Commonwealth Bank Business Line of Credit;

e. First Commonwealth Bank Excavator loan;

f. Loan from Husband's parents regarding PNC Bank Line of Credit; and

g. All First Commonwealth Bank loans associated with High Hill Storage.

3. The master erred in failing to award husband credit for payments made on the marital liabilities after separation.

4. The master erred in assigning all personal property located at [the] Osborne Farm to wife.

5. The master made incorrect findings of fact regarding wife's income and expenses.

6. The master erred in awarding wife alimony in the amount of $500.00 per month for eight years.

7. The master incorrectly applied the seventeen factors for awarding alimony.

8. The master erred in requiring husband to pay wife's counsel fees in the amount of $5,100.00.

9. The master erred in failing to attribute to wife a portion of the tax liability associated with the receipt of the oil and gas lease bonus money and further erred in requiring husband to be fully responsible for payment of taxes.

10. The master erred in leasing the funds held in escrow to wife and [to the equitable distribution master for his fees].

11. The master erred in requiring husband to make a lump sum payment of $66,000.00 to wife.

12. The master erred in awarding wife 50% of any and all future oil and gas-mineral rights associated with the parties' real estate.

13. The master erred in failing to totally discredit the

appraisals of wife's appraiser.

14. The master erred in failing to correctly identify the real property and in misidentifying real property.

15. The master made incorrect findings of fact and conclusions in determining the value of the real property owned by the parties.

16. The master provided insufficient findings as to the values of the real property.

17. The master erred in determining the value of the personal property.

18. The master erred in awarding wife more than 50% of the marital estate.

19. The master erred in awarding wife the Harley Davidson Sportster.

20. The master made incorrect findings of fact and conclusions in the discussion of the relevant factors considered under Section 3502(a) of the divorce code.

21. The master erred in determining the value of the 1971 Oldsmobile 442 and in failing to find that husband only owns a one-half interest in the automobile.

22. The master erred in calculating the net value of the marital estate.

In disposing of these exceptions, the court observes that while a master's report is advisory only, it is to be given great deference. *Fiorelli v. Fiorelli*, 195 A.2d 369 (1964); *Morschhauser v. Morschhauser*, 516 A.2d 10 (1986). A reviewing court has a duty to make a complete and independent review of the proceeding below. *Rollman v. Rollman*, 421 A.2d 755 (1980).

In reviewing the master's considerations, the report should be given "fullest consideration" particularly on issues of credibility. *Kohl v. Kohl*, 564 A.2d 222 (1989). The review is intended to discover inherent improbabilities in the stories of the witnesses, inconsistencies and contradictions, bias, interest, and opposition to incontrovertible physical facts by which credibility may be ascertained. *Rollman, supra.* However, because the master is the person hearing the testimony and observing the demeanor and appearance of the witness, any issue of credibility must be resolved by giving the Master's findings the fullest consideration. *Rorabaugh v. Rorabaugh*, 448 A.2d 64 (1982). With this standard in mind, the following is a discussion and disposition of the parties' exceptions.

Husband's Exception 1

Husband's first exception contends that the master failed to appropriately weigh the testimony regarding the real property. Husband argues that the master failed to consider the fact that defendant is dependent upon the real property to maintain his business. Husband states that, by awarding wife the property located at 294 Bedford Road in Pulaski Township, Lawrence County, Pennsylvania, the master has significantly impaired husband's ability to maintain his business. Husband contends that his business is dependent on retaining the Bedford Road property and the other properties awarded to wife.

The master's report and recommendations indicated that the master heavily considered husband's business and how a division of property would affect husband's ability to maintain his business. The master specifically stated, "[a]n additional consideration in that husband should retain more of the real property so he [can] continue operating the business." Master's report, p. 41. The master's report goes on to analyze how a property award in husband's

favor would impact wife's interest in the martial property. *Id.* Therefore, husband's first argument that the master's analysis fails to consider husband's reliance on the property in continuing his business is unsupported by the record.

Husband further argues that his business will financially suffer if he does not receive the "bulk" of the marital property. Husband specifically takes exception to wife being awarded the property located at 294 Bedford Road, which husband refers to as the Osborne Farm. At the time of argument on husband's exceptions, husband asserted that this piece of property is vital for his landscaping business. A review of the transcripts from the equitable distribution proceedings, however, indicates husband associated some level of necessity associated with each piece of property and the future success of his businesses. The 294 Bedford Road property contains a residence, which husband characterized as a rental property. For this reason, the master determined that it would be appropriate for wife to receive this property to live in or rent and otherwise generate additional income.

In a case like this, where the majority of the marital estate is invested in real property, it is disingenuous for either party to expect an award of the entire marital estate when there are insufficient liquid assets to compensate the other spouse for their investment into the marriage. Husband and wife purchased the marital property over time as husband's businesses developed. Wife's work outside and inside the home substantially contributed to husband's ability to successfully develop his businesses. Therefore, the court finds no error in the assignment of real property in the instant case.

Husband's first exception is denied.

Husband's Exception 2 and Husband's Exception 3

Husband next contends that the master failed to provide husband credit for payments made on the marital liabilities following the parties' separation. Beginning on page 33 of the master's report, the master identifies each of the marital loans and liabilities. The loans and liabilities were outlined as follows:

a. First Commonwealth Bank Consolidation Loan

Balance @ Separation $151,325.16

Current Balance $139,502.60

b. Wells Fargo Home Mortgage

Balance @ Separation $102,207.06

Current Balance $78,277.60

Husband has made monthly payments

c. First Commonwealth Bank Commercial Loan

Balance @ Separation $38,477.65

Current Balance $23,482.68

d. First Commonwealth Bank Business Line of Credit

Balance @ Separation $19,863.62

Current Balance $17,506.49

e. First Commonwealth Bank Excavator Loan

Balance @ Separation $61,220.00

Current Balance $37,800.78

f. Storage Shelter Loans (Three Loans)

Balance @ Separation i. $43,695.79

ii. $31,816.79

iii. $38,666.63

$114,179.21

Current Balance

i. $27,796.76

ii. $12,761.50

iii. $26,901.64 $67,449.90

g. PNC Bank Line of Credit

Balance @ Separation $56,317.23

Current Balance $51,567.11

In distributing the marital debt, the master originally assigned the balance owed on the First Commonwealth Commercial loan to wife. The balance on this loan, and the amount assigned to wife equals $23,482.68. This loan was also obtained by the parties to consolidate their credit card debt: The parties offered the 294 Bedford Road property as collateral for this loan.

The master subsequently recommended that husband assume the First Commonwealth Commercial loan in order to achieve an equal division of the marital estate. The court finds this recommendation to be an error. This debt was incurred by both parties, and it is wife's desire to obtain possession of the 294 Bedford Road property. Therefore the court believes it is appropriate to assign this liability to wife.

The remaining debts were also assigned to husband. Of the seven loans, the First Commonwealth Bank Business Line of Credit, the First Commonwealth Bank Excavator loan and the Storage Shelter loans were only used for

purchases and debts associated with husband's businesses. Husband will continue to own the businesses and receive income from the businesses. Therefore, the court finds no error in assigning these liabilities to husband.

The First Commonwealth Bank Consolidation loan, Wells Fargo Home Mortgage and PNC Bank Line of Credit are a combination of debt incurred by both parties for marital and business purposes. The court will therefore analyze the character of each liability individually.

The First Commonwealth Bank Consolidation lan merged a large portion of marital debt incurred by the parties. Wife was responsible for incurring $50,548.60 of this debt. The remainder of this debt is a combination of the parties' Chase Bank debit card, First National bank debit card, Sky Bank debit card and Bank of America debit card by husband on behalf of his businesses and the parties' farm. Wife was required to pay on this loan during the marriage and following separation. Wife's monthly payments equaled $1,000.00. Wife was often unable to make her monthly payment following the parties' separation despite a court order being implemented requiring wife to make the $1,000.00 monthly payment. Alternatively, husband frequently made monthly payments following the parties' separation. When Husband did make a monthly payment, he paid the sum of $500.00. Husband was compensated for his payments via a $4,500.00 distribution from the parties' escrow account. *See* master's report, p. 55.

Given the competing liability between the parties regarding the First Commonwealth Bank Consolidation loan, the court has considered assigning a portion of this debt to wife, but has concluded that doing so would create an inequitable division of the marital estate. Additionally, the court considers the fact that the portion of this debt incurred by wife was on behalf of the parties in an attempt

to maintain the standard of living assumed in the marital residence during the parties' marriage. The court finds that the debt incurred by wife, while possibly financially irresponsible, was not frivolous or self serving. Husband shall therefore assume responsibility for the remaining portion of the First Commonwealth Bank Consolidation Loan.

The Wells Fargo Home Mortgage encumbers the marital residence. It is husband's desire to obtain possession of the marital residence, and the master's recommendation is consistent with husband's request. Therefore, the court finds no error in assigning this liability to husband.

The PNC Bank Line of Credit is more complicated in nature because the line of credit drawn from is owned by Husband's parents. During the parties' marriage, the parties borrowed $54,000.00 from husband's parents' line of credit to purchase office space for husband's business. Husband drew an additional $4,500.00 following separation to avoid bank foreclosure on the marital residence. The evaluation of the assignment of this loan is consistent with its prior reasoning. The majority of this debt was incurred for the benefit of husband's business. The balance of the debt was incurred by husband to save the marital residence, which has been awarded to husband. In general, the PNC Bank Line of Credit is attributed to debt favorable to husband. Therefore, the court finds no error in assigning this liability to husband.

Consistent with the court's analysis set forth above, husband's third exception is granted in part and denied in part.

Husband's Exception 4

Husband's fourth exception contends that the master erred in awarding wife all the personal property located

at the 294 Bedford Road property to wife. The master determined the personal property located at this residence had a total net value of $27,475.00. The master sets forth in a footnote located on page 53 of his report that he awarded husband and wife the personal property located at the respective residences awarded to the parties. The master reasoned that the parties could "swap" any of the personal property located in the other's residence if the award did not meet the parties' desires. The court finds this recommendation to be reasonable. Husband's fourth exception is therefore denied.

Husband's Exception 5

Husband's fifth exception argues that the master made incorrect findings of fact regarding wife's income and expenses. In reviewing the master's report, the court finds that each of the master's factual findings is wholly supported by the notes of testimony, in addition to referencing the notes of testimony where such evidence was obtained. Husband's fifth exception is denied.

Husband's Exception 6

Husband's sixth exception argues that the master erred in awarding wife alimony. As stated in the court's analysis under husband's seventh exception, the master carefully evaluated each of the seventeen factors in determining whether wife was entitled to an award of alimony. The master properly concluded that any marital misconduct displayed by wife was a result of wife attempting to maintain a financial status quo at the marital residence. Furthermore, the parties were married for a considerable period of time, and wife's employment outside of the home enabled husband to pursue his career goals. The master additionally acknowledges that husband's earning capacity was superior to wife's, and that wife's basic needs could not be sustained via her equitable distribution

award because there is a deminimis liquid estate available to the parties. For these reasons, the master concluded that an award of alimony in the amount of $500.00 would be appropriate and the court agrees with the master's conclusion. Husband's sixth exception is therefore denied.

Husband's Exception 7

Husband's seventh exception contends that the master incorrectly applied the seventeen factors for awarding alimony. Husband specifically contends that the master failed to consider wife's skills, training and employability in addition to her current employment. Husband believes that wife's reasonable needs can be supported by continuing to work and through equitable distribution. Husband additionally argues that the master erred in not appropriately weighing the fact that wife received funds of approximately $21,000.00. These funds were paid to the parties when they executed gas leases for the properties owned by the parties in Lawrence County.

A review of the master's report justifies the court's finding that each of the statutory factors set forth at 23 Pa.C.S.A. §3701(b) were properly addressed by the master. Although some of the master's analysis is incorporated by reference from the master's analysis of the Section 3502 factors, the master's analysis is thorough and fully supported by the evidentiary record. The master additionally considered the fact that wife's equitable distribution award, though significant, is tangible in nature; thereby failing to provide wife the monetary support necessary to sustain her reasonable needs. The court concludes that husband's seventh exception is without merit. Husband's seventh exception is therefore denied.

Husband's Exception 8

Husband's eighth exception contends that the master

erred in awarding wife counsel fees in the amount of $5,100.00. Husband specifically argues that the master failed to consider the fact that wife received an advance against equitable distribution in the amount of $15,000.00 for counsel fees and litigation expenses. The court finds this argument to be without merit. The master did in fact consider wife's advance, *see* master's report p. 66, however the master concluded that this advanced failed to adequately accommodate the expenses wife incurred through counsel fees and expert witnesses. Husband's eighth exception is therefore denied.

Husband's Exception 9

Husband's next exception contends that it was error to assign the tax liability associated with oil and gas royalties solely to husband. Prior to the equitable distribution proceedings, the parties received the sum of $72,930.00 as a sign-on bonus under an oil and gas lease. The $72,930.00 was then placed in escrow with husband's counsel. Each party received a $15,000.00 advance from these sums. Wife used her advance for payment of counsel fees. Husband subsequently received $21,733.14 from these sums, which husband applied towards the tax liability incurred from the original $72,930.00. A portion of the tax liability was penalties and interest (approximately $5,000.00) caused by husband's failure to pay the tax. Thus, balance on the escrow funds equaled $21,196.86 at the time of equitable distribution.

Husband contends that the master assigned the total tax liability to husband, but husband's contention is erroneous. The money used by husband to pay the tax liability was an additional withdrawal from the marital portion of money. Therefore, the tax liability was paid equally by husband and wife. Husband's ninth exception is denied.

Husband's Exception 10

Husband's tenth exception contends that the master erred in releasing funds held in escrow to wife and to compensate the master for services rendered during the course of the equitable distribution proceedings. The court finds this contention to be entirely without merit as these funds were released from escrow upon proper petition and pursuant to prior orders issued from this court. Husband's tenth exception is therefore denied.

Husband's Exception 11

Husband's eleventh exception contends that the master erred in awarding wife a lump sum payment of $66,000.00. In awarding wife a lump sum distribution, the master attempted to even out the equities distributed to the parties. Despite the contentions set forth by husband in his exceptions, husband was awarded a disproportionally larger percentage of the marital estate. Additionally, the court, upon review of the master's assignment of financial debt and liability, increased wife's debt, thereby decreasing husband's debt. Based upon these findings, the court believes that the amount awarded to wife as a lump sum distribution is appropriate. Husband's eleventh exception is therefore denied.

Husband's Exception 12

Husband's twelfth exception contends that the master erred in awarding wife fifty percent of any and all future oil and gas mineral rights associated with the parties' real estate. The court finds husband's exception to be correct. In their very nature, the receipt of oil and gas proceeds are speculative; to award one party a future right in an asset assigned to the opposing party fails to cause a final economic resolution to the equitable proceedings. Therefore, each party shall be awarded 100% of all future oil and gas mineral rights received from their respective properties. Husband's twelfth exception is therefore

granted.

Husband's Exception 13

Husband's thirteenth exception argues that the master erred in failing to totally discredit wife's expert appraisers. The court finds no error in the master's placement of credibility of wife's appraisers; the master properly considered the appraiser's credentials in determining his ability to testify as an expert. Furthermore, the master made adjustments to the valuations provided by wife due to any discrepancies in the expert's testimony and offered report. The master also took into consideration husband's appraisals prior to placing a value on any parcel of property owned by the parties. The court finds the master's analysis to be appropriate. Husband's thirteenth exception is therefore denied.

Husband's Exception 14

Husband's next exception states that the master erred in his identification of the real property owned by the parties. In reviewing the master's report, the court did find inconsistencies made by the master when discussing several pieces of property. However, the court finds this error to be harmless because the master correctly identified the parcels in his identification of assets. Furthermore, the court has made appropriate adjustments to the master's overall recommendation in other areas of this analysis, which the court believes cures any misconceptions that may have been caused. Husband's fourteenth exception is therefore denied.

Husband's Exceptions 15, 16 and 17

Husband's fifteenth, sixteenth and seventeenth exception all take issue with the master's valuation of the parties' real and personal property. With respect to the master's valuation of the real properties, the master's report

indicates that the master considered the valuations offered by both husband and wife in making a determination. Where appropriate, typically where the expert evaluations were close in value, the master divided the differences of the valuation in reaching his determination. Alternatively, the master also considered the fact that in some instances, it was not appropriate to give full credibility to wife's expert's evaluation because the appraisals conducted were performed for lending and mortgaging purpose and not for the purpose of completing an equitable distribution evaluation. The master conducted a thorough evaluation of each piece of personal property and fully justified his assignment of value to the parties' real property. The master's evaluation was premised upon facts set forth in his analysis of each piece of real property. Each fact utilized by the master references a supporting reference to the notes of testimony. *See e.g.* master's report pp. 14-23.

Similarly, the master performed his analysis of the valuation of the real property in a manner consistent with his valuation of the parties' real property. *See e.g.* master's report pp. 24-29. Husband's fifteenth, sixteenth and seventeenth exceptions are therefore denied.

Husband's Exception 18

Husband's eighteenth exception contends that the master erred in awarding wife more than fifty percent of the marital estate. Given the court's review of husband's exceptions and the master's recommendations, as well as the adjustments made thereto, the court finds husband's eighteenth exception to be moot. Husband's eighteenth exception is therefore denied.

Husband's Exception 19

Husband's nineteenth exception states that the master erred in awarding wife the Harley Davidson Sportster. The

master valued the Sportster at $6,000.00. Master's report p. 27. At the time of the Equitable Distribution Hearing, the Sportster was in husband's possession. N.T. September 17, 2013, p. 62. This information is the only testimony received during the equitable distribution hearing. In reviewing the master's report, the court determines that the master awarded Wife the Harley Davidson Sportster in order to achieve an overall equitable distribution of marital assets. The court therefore finds no error in the master's recommendation. Husband's nineteenth exception is therefore denied.

Husband's Exception 20

Husband's twentieth exception contends that the master made incorrect findings of fact and conclusions in his analysis of the statutory factors set forth in Section 3502(a) of the divorce code. A thorough review of the master's report clearly indicates that each of the master's evidentiary findings references the supporting testimony from the Equitable Distribution Hearing. After reviewing the master's analysis of each of the equitable distribution factors, the court fails to find a conclusion that is unsupported by a fact, which is properly supported by the testimony provided. Husband's twentieth exception is therefore denied.

Husband's Exception 21

Husband's twenty-first exception states that the master erred in determining the value of the parties' 1971 Oldsmobile 442 and in failing to assign husband a greater interest in the vehicle. At the time of the equitable distribution hearing husband had possession of the 1971 Oldsmobile. N.T. September 17, 2013, p. 62. Wife offered an appraised value for this vehicle of $7,500.00. In his post trial memorandum, Husband concurred with wife's stated value. Therefore, the court finds no merit in husband's

contention that the master incorrectly valued the 1971 Oldsmobile.

Additionally, the master determined that wife would receive no interest in this vehicle; therefore, any existing marital interest was awarded to husband. The court therefore finds no error in the master's recommendation. Husband's twenty-first exception is therefore denied.

Husband's Exception 22

Husband's last exception contends that the master erred in calculating the net value of the marital estate. The court finds this exception to be vague in nature. However, the court has thoroughly addressed each of husband's exceptions regarding specific contentions regarding the master's findings and recommendation. Because the court believes that each of husband's prior exceptions have been adequately addressed, the court will incorporate its prior analysis and deny husband's last exception.

Consistent with the foregoing analysis, the court will enter the following order of court as a final resolution to the pending economic claims between the parties:

ORDER OF COURT

And now, this 30th day of September, 2014, this matter being before the court on defendant's/husband's exception to the report and recommendations of the equitable distribution master, with Shawn B. Olson, Esquire, appearing and representing the plaintiff/wife, Tracey Osborne, and with Deborah Shaw, Esquire, appearing and representing the defendant/husband, and in consideration of the arguments and briefs submitted by counsel, as well as the report and recommendations of the equitable distribution master, and consistent with the attached opinion, the court hereby orders and decrees as follows:

1. The following real property is awarded to the defendant/husband, Wesley Osborne,

a. 767 High Hill Road, Pulaski, PA-Marital Residence;

b. High Hill Road-High Hill Lawn Service-Shop, Pulaski, PA;

c. 160 Shenango Street, Pulaski, PA;

d. 1946 Union Street, Pulaski, PA-Business Office;

e. 1966 State Route 208, Pulaski, PA-High Hill Storage;

f. Pulaski-Hubbard Road property;

g. High Hill Road property (6.36 acres);

h. High Hill Road property (1 acre);

i. Nassau Road Property;

j. Nancy's Island; and

k. Campground Road Property.

2. The following real property is awarded to the plaintiff/wife, Tracey Osborne:

a. 294 Bedford Road, Pulaski Township-Osborne Farm;

b. 4857 Hillsville Road, Pulaski, PA;

c. 1927 State Route 208, Pulaski, PA; and

d. Tionesta Camp, Forest County, PA.

3. Wife shall assume full obligation for the First Commonwealth Bank Commercial Loan.

4. Husband shall assume full obligation for the following loans / lines of credit:

a. First Commonwealth Bank Consolidation Loan;

b. Wells Fargo Mortgage;

c. First Commonwealth Bank Business Line of Credit;

d. First Commonwealth Bank Excavator Loan;

e. Loan from Husband's parents regarding PNC Bank Line of Credit; and

f. All First Commonwealth Bank loans associated with the High Hill Storage.

4. Husband shall make a lump sum payment to wife of $66,000.00 within one hundred twenty (120) days.

5. Each party shall be solely responsible for any maintenance costs, taxes and insurances for the respective real estate each is retaining. Wife shall exit the marital residence within thirty (30) days of the date of this order. The parties shall transfer all interests either owns in the real estate being transferred to the other party within one hundred twenty (120) days.

Husband shall satisfy the First Commonwealth Commercial Loan within one hundred twenty (120) days. Husband may refinance or liquidate any property, real or personal, distributed to him for the purpose of satisfying the First Commonwealth Commercial Loan or $66,000.00 lump-sum payment to wife. Wife shall execute any documents required for husband to refinance or liquidate property. Husband shall indemnify and hold wife harmless for any of the obligations set forth in paragraph three (3).

6. Husband shall retain all personal property remaining at / in the marital residence, the business office, the High Hill Lawn Service shop and the High Hill Storage shelters. Husband shall also retain all firearms and contents of the safes remaining in the marital residence, with the

exception of the one bag of coins belonging wife, which husband shall forward to wife.

7. Wife shall retain all personal property located at Osborne Farm and the contents of the Tionesta Camp safe. Wife shall also retain the items located at the Tionesta Camp, with the exceptions of the brown recliner, which shall be forwarded to husband, and the personal items belonging to the parties' children.

8. Husband shall retain the Harley Davidson Softail, 1993 Ford kit car, 1971 Oldsmobile 442, 2005 Ford F-150 in disrepair and all other trucks in his possession.

9. Wife shall retain the Harley Davidson Sportster.

10. Husband is awarded all business ownership rights associated with High Hill Lawn Service, Crit-R-Done, Osborne and Sons Trapping Supply and High Hill Storage. Wife shall have no interest therein.

11. Wife shall retain the retirement account she established following separation and the 2011 Jeep Patriot.

12. Each party shall own 100% of any and all oil-gas-mineral rights including rental payments, signing payments, deposits, bonus money, royalty percentages, future payments and any other benefit derived from such lease or sale of oil-gas-mineral rights associated with any of the real property assigned to each party pursuant to the provisions of this order of court.

Each party shall retain the $21,070.89 each received pursuant to the oil and gas lease signed in December of 2013.

With respect to general leases for houses, mobile homes or property, each party is awarded all such future ordinary rents generated by the renting of real property each is retaining.

13. Husband shall pay wife alimony in the amount of $500.00 per month beginning June 1, 2014 and terminating on May 31, 2022. The alimony award shall cease according to applicable law. The parties' August 24, 2011 support agreement (memorandum of understanding) shall terminate effective June 1, 2014.

14. Each party is responsible for their respective health care insurance costs.

15. Husband shall compensate wife's counsel $5,100.00 towards counsel Fees. The payment may be made in twelve (12) monthly installments of $425.00 each, beginning July 1, 2014 and ending June 30, 2015. The payments are due by the fifth day of each month.

16. The parties shall timely execute all documents necessary to effectuate any of the provisions of this order

17. The following sums shall be released from the escrow funds held by counsel for defendant:

a. $5,937.50 to the Prothonotary of Lawrence County for payment of master's fees within twenty (20) days;

b. $9,879.68 to husband; and

c. $5,379.68 to wife.

18. Wife's petition for contempt and for special relief filed on August 26, 2014 is denied. The court finds that wife has presented insufficient evidence to sustain a finding of contempt.

19. The prothonotary shall serve a copy of this order and opinion to counsel of record for the parties.